THE CITIZENS' NATIONAL BANK OF BALTIMORE *vs.*
WILLIAM E. HOOPER, and others, trading as WIL-
LIAM E. HOOPER & SONS.

## PLEDGE.

*Title to negotiable paper, how acquired, how lost—Mala fides—
Negligence—How they affect title to negotiable paper—Evi-
dence—Prayers and instructions.*

J. A. H. borrowed $5000 from the Citizens' National Bank of Baltimore, and
deposited as collateral security for the payment thereof a note of W. H. &
Sons, and a $100 U. S. bond. Next day, he gave to the bank his indi-
vidual check on himself for the amount so borrowed, and the bank delivered
to him the collaterals before deposited. Shortly afterward J. A. H. failed,
and it was discovered by the bank that he had returned the note to the
drawers, W. H. & Sons, who on demand refused to deliver up to the bank
the note or its value. In an action by the bank to recover from W. H. &
Sons the value of the note, it was HELD :

1st. If a bank or other party take a negotiable bill or note before maturity,
for consideration and without *mala fides*, such party acquires a good title,
notwithstanding there may have been negligence; and gross negligence
while it may be *evidence* of *mala fides*, will not alone be sufficient to defeat
the plaintiff's title.

2nd. Nothing less than proof of *knowledge* of facts that show the want of
authority on the part of the person transferring the note will be sufficient
to defeat the plaintiff's title

3rd. The plaintiff is not bound to make inquiry, and mere negligence, how-
ever gross, not amounting to wilful and fraudulent blindness, while it would
be *evidence of mala fides*, is not the same thing.

4th. It makes no difference that the bill or note is only pledged as collateral
security, and is not absolutely and unconditionally transferred.

5th. If the bank knew that the note was not the property of the party offer-
ing to deposit or sell it, the taking of the note by way of collateral security
for money loaned imparted no title as against the real owner.

6th. It is a well established principle that possession is necessary to perfect a title by pledge, and it is equally well settled that the delivery back of the possession of the thing pledged, by the act or with the consent of the pledgee, terminates his title, *unless it be delivered back for a temporary purpose only*, or to be held by the pledgor in a new character, such as special bailee, or agent.

7th. The Court will not grant a prayer asking that the jury be instructed that there is no evidence in the case legally sufficient to warrant their verdict for plaintiff, if there is any evidence tending to prove the facts alleged by the plaintiff, although the evidence may not be direct.

APPEAL from the Court of Common Pleas of Baltimore City.

James A. Hooper, a note and bill broker, trading under the name of Hooper, Reese & Co., had large dealings with the Citizens' National Bank of Baltimore. He borrowed from time to time large sums of money from said bank, securing the payment thereof by deposits of collaterals, which the bank used to allow him to withdraw next day on his giving his individual check for the amounts borrowed.

Wm. E. Hooper & Sons, of Baltimore, placed in the hands of said James A. Hooper, their promissory note at four months for $5000, payable to their own order and by them endorsed in blank, to be sold by him for their account, but with instructions not to allow a higher rate of discount than $5\frac{1}{2}$ per cent. On the 16th of March, 1875, this note was offered by said James to the said bank, and they refused to buy it at $5\frac{1}{2}$ per cent., but offered to buy it at 6 per cent. Hooper said that he was *limited* to $5\frac{1}{2}$ per cent. Afterwards, on the same day, Hooper obtained from the bank a loan of $5000, depositing as security therefor the said note of W. E. Hooper & Sons, and a $100 U. S. bond The next day the note and bond were withdrawn, he having first given his check for the amount in accordance with the usual custom. There was a conflict of testimony as to the understanding on which the collaterals

so deposited were withdrawn, the bank contending that it was expressly understood by both parties, that the collaterals or their proceeds were regarded as sacredly belonging to the bank, but Hooper contending, that such understanding did not apply to every case of the withdrawal of collaterals: that only when he borrowed to take up his loans at other banks did such understanding apply: that in cases of collaterals deposited to protect his overdrafts there was no such understanding: the bank did not rely upon the collaterals, but upon his honor: they had his check and he had his collaterals: the bank was under no obligation to return the collaterals: it was optional with them: he supposed they did it, because they thought there was no risk, relying as they did upon his honesty and not his solvency. It was proved that Hooper was insolvent at the time of this transaction and that the bank knew it. The note so withdrawn by James A. Hooper was returned to Wm. E. Hooper & Sons, the drawers. On demand of the bank, the said Wm. E. Hooper & Sons refused to deliver up the property.

Upon the evidence produced, the plaintiff offered three prayers, of which the first was granted, but the second and third were rejected.

Plaintiff's prayers:

1. If the jury shall find from the evidence that James A. Hooper was a customer of the plaintiff, and was in the habit of obtaining loans from the said plaintiff, upon collateral security, to cover checks drawn upon the plaintiff, and shall further find that it was agreed between the plaintiff and the said James A. Hooper, that he should have the privilege at any time of obtaining the said collaterals, for the purpose of selling the same, with the distinct understanding and agreement that the said James A. Hooper should hold the said collaterals sacredly as the property of the plaintiff if not sold, with the power to said Hooper to sell the same, and that in case he did not sell

the said collaterals on the day when they were so obtained by him from the plaintiff, he should return the said collaterals to the plaintiff on that day, and that in case he did sell said collaterals, he would return the proceeds of said sale to the plaintiff on said day. And if they shall further find, that on the 16th day of March, 1875, the said James A. Hooper borrowed from the plaintiff the sum of $5000, and deposited as collateral security to the said loan, the note of William E. Hooper & Sons, the defendants, for $5000 mentioned in the evidence, together with a $100 United States bond, and that the said loan was made upon the faith of the said collaterals. And if they further find that on the 17th day of March, 1875, the said plaintiff delivered the said note and bond to the said James A. Hooper, in pursuance and upon the faith of the agreement above mentioned, and that the said James A. Hooper did not sell the said collaterals nor return the same to the plaintiff on that day, but delivered the said note to the defendants, William E. Hooper & Sons, and that the defendants gave no consideration whatever to the said James A. Hooper for the return of the said note to them, or upon the faith of the same. And if they shall further find that prior to the institution of this suit, the plaintiff demanded the said note of the said defendants, and the said defendants refused to deliver the said note to plaintiff, then the plaintiff is entitled to recover the value of said note, with interest from the time of such demand and refusal, less the amount, with interest, which they shall find to have been received by the plaintiff from the bankrupt estate of James A. Hooper, on account of the said loan of $5000.

2. The plaintiff prays the Court to instruct the jury, that in order to affect the title of the bank to the note in controversy, it is necessary that the plaintiff shall be shown to have acted in bad faith in taking the said note

from James A. Hooper, and there is no evidence in the case legally sufficient to show such bad faith.

3. The plaintiff prays the Court to instruct the jury, that there is no evidence in the case legally sufficient to show that the bank, at the time of the making of the loan mentioned in the evidence, had knowledge or notice of any limitation of the authority of James A. Hooper to deal with the note in question.

The defendants offered ten prayers, of which the second and tenth were granted, but the rest were all rejected.

Defendants' prayers.

2. That if the jury find that the promissory note in question was entrusted by the defendants to James A. Hooper, as a broker, for sale for them, and that the Citizens' National Bank of Baltimore had notice, at the time of receiving said note from said James A. Hooper, that he was not the owner thereof, but only had possession of it as broker, for the purpose of selling it for account of his principals, then the said bank was not entitled to retain said note as against the defendants for indebtedness of the said James A. Hooper to said bank, and cannot recover against the defendants in this action, because of their having since obtained possession of said note or destroyed it.

10. If the jury find that the note in question of Wm. E. Hooper and Sons, was delivered to the plaintiff in the manner and under the circumstances testified to by James A. Hooper, and on the 17th March, 1875, the note was returned to said James A. Hooper by the plaintiff, to enable him to use it at his pleasure, in the prosecution of his business, the plaintiff not looking to said note as its security, but trusting to the honor of James A. Hooper to make his account good at 3 o'clock, then such surrender of possession by the plaintiff put an end to any title the plaintiff had in said note to secure said loan of $5000 as against these defendants.

To the rulings of the Court below, rejecting the prayers of the plaintiff, and granting those of defendant, the plaintiff excepted, and prayed an appeal.

The cause was argued before BARTOL, C. J., MILLER, ALVEY and ROBINSON, J.

*Robert D. Morrison,* for appellant.

Trover is the proper form of action to recover a promissory note or its value. *Wi'son vs. Larmouth,* 3 *Johns.,* 432 ; *Kingman vs. Pierce,* 17 *Mass.,* 247 ; *Day vs. Whitney,* 1 *Pick.,* 502 ; *Smith vs. Robertson's Ex'r,* 4 *H. & J.,* 30 ; *Way vs. Davidson,* 12 *Gray,* 465 ; *Clowes vs. Hawley,* 12 *Johns.,* 484 ; *Winner vs. Penniman,* 35 *Md.,* 163; 5 *Sneed.,* 712, 717.

Waiver of lien is matter of intention, and the bank, by giving the note to James A. Hooper, did not part with its lien unless it intended so to do. *Hayes, et al. vs. Riddle,* 1 *Sanford's Sup. Court R.,* 248 ; *Cross on Lien,* 34 *Law Library, top paging* 43 ; *Story on Bailments, sec.* 299 ; and authorities there cited ; *Story on Agency, secs.* 368–370 ; *Jones vs. Sinclair,* 2 *N. H.,* 319 ; 3 *Phillips on Ev.,* 535.

That the proof shows conversion of the promissory note in question. See 1 *Bouvier's Law Dictionary,* 310, and authorities there cited.

Where actual conversion is proved, it is not necessary to prove demand and refusal in order to maintain the action. *State vs. Patten,* 49 *Maine,* 383 ; *Carr vs. Gale, Davies,* 328; *Dieters vs. Foos,* 8 *Md.,* 148; *Kyle vs. Gray,* 11 *Ala.,* 233 ; *Harris vs. Sanders,* 2 *Strobert Eq.,* 370.

The case of the plaintiff, as stated in its first prayer, is fully within the principles established by the foregoing authorities, and it comes also within that most just principle of law and equity, which was recognized by this Court in the case of *Hall against Hinks,* 21 *Md.,* 418.

"That when one of two innocent persons must suffer by the fraud of a third, the loss shall fall upon him who has enabled such third person to do the wrong." See also *Arrandale vs. Morgan*, 5 *Sneed*, (*Tenn*,) 712–717.

The fact that the plaintiff received the dividend from the bankrupt estate of James A. Hooper, on the claim for which said note was deposited with it as collateral security, does not, as contended in defendants' ninth prayer, affect the plaintiff's right to maintain the action. *Burn vs. Morris*, 4 *Tyrw.*, 485 ; 2 *M. & C.*, 579 ; *Rawson vs. Tuel*, 47 *Maine*, 506.

The plaintiff's second prayer was improperly refused. *Goodman vs. Harvey*, 4 *Adol. & Ellis*, 870 ; *Cecil Bank vs. Heald*, 25 *Md.*, 574 ; *Maitland vs. The Citizens' Bank*, 40 *Md.*, 568–9, and authorities there cited.

The plaintiff's third prayer was also improperly refused, as a reference to the testimony and to the authorities last above cited will abundantly establish. At the trial below it was contended, and the same point runs through the prayers of the defendants, that James A. Hooper was a bill broker, and that therefore the plaintiff was affected with notice that he held the said note in that capacity. But the evidence shows that Hooper was a banker as well as a broker. And the memorandum check given by Hooper, when he received the promissory note from the plaintiff on the 17th March, 1875, contains the firm name and business title, "Hooper, Reese & Co., Bankers," the word brokers appearing nowhere on the check.

The only other evidence upon which it could by possibility be contended, that the bank had any notice of any limitation of James A. Hooper's authority, to deal with the note, is that of James A. Hooper, where he says :

"I had offered the note a day or two before the suspension, to Mr. Guest for sale. Mr. Guest offered to buy it, at the rate of six per cent. per annum. I told Mr. Guest I was limited to five and a half per cent., and could not

sell it at six. Of course, Mr. Guest knew that if I held it myself, I could not be limited in price."

*Arthur W. Machen,* for appellee.

1. If a broker, having a negotiable instrument in his hands for sale for the owner, pledge it for his private debt to a person who knows, or has sufficient reason to know, that it does not belong to him, the pledge is void as against the owner. 1 *Pars. Notes and Bills.* 119 ; *Byles,* 34, 35 ; *Cecil Bank vs. Farmers' Bank,* 22 *Md.,* 148, 155 ; *Bank of Metropolis vs. New Eng. Bank,* 6 *How.,* 212, 227 ; *Maitland vs. Citizens'. Bank,* 40 *Md.,* 568, 569 ; and see *McBride vs. Farmers' Bank,* 25 *Barb.,* 657 ; *Miller vs. Farmers' Bank,* 30 *Md.,* 398, 400.

2. There was abundant evidence from which the jury might find that James A. Hooper did not own the note.

The fact that he was a bill broker, known to the bank as such, is ground for a presumption that the bank knew he was acting for some third person. *Baxter vs. Duren,* 29 *Maine,* 434.

But the bank had express notice from the negotiation between Mr. Guest and James A. Hooper for the purchase of the note by the bank, that he was not the owner of it, but was acting for a principal. Mr. Guest was informed that he was limited by his *instructions* not to sell the note at more than five and one-half per cent. per annum ; and this limitation actually prevented him from disposing of it to the bank upon the terms it offered.

Besides, James A. Hooper, as the bank had the best reason to know, was utterly insolvent, living from day to day merely upon the commissions he was earning as broker.

Mr. Guest himself, in his testimony on cross-examination, says that in the interview he had with James A. Hooper after 3 o'clock on the 17th of March, the day of the failure, he, Guest, " had a suspicion that he had got

this note from Wm. E. Hooper & Sons *for sale,* and had returned it to them." " My impression," he adds, " was that Wm. E. Hooper & Sons had limited him to six per cent., and that he wanted to sell it at five-and-a-half to make the half per cent. commissions.

With that well-founded impression on his mind—an impression which a less experienced person than a bank cashier. could not fail to receive from what took place when the note was offered for sale at the bank—it is impossible to say that Mr. Guest had not notice of the character in which James A. Hooper possessed the note.

3. There is no question before the Court as to the sufficiency of the evidence to support the defendants' second prayer, which was granted ; no such question having been made in the Court below, according to the requirements of the 4th rule, respecting appeals. *Worthington vs. Tormey,* 34 *Md.,* 182 ; *Straus vs. Young,* 36 *Md.,* 246 ; *Ann. & Elk Ridge R. R. Co. vs. Gantt,* 39 *Md.,* 115 ; *Balto. Build. Asso. vs. Grant,* 41 *Md.,* 560.

4. The pledge, even if effectual originally, depended upon possession, and ceased to operate when the bank relinquished the possession. *Story on Bailments,* sec. 364 ; *Walker vs. Staples,* 5 *Allen,* 34.

It was not competent to the bank, in returning the note to the broker from whom they had received it, for the purpose of enabling him to exercise his business of broker in relation to it, to make his possession avail as the bank's possession by virtue of any special agreement to that effect, (had such an agreement existed in fact,) so as to maintain the pledge, as against the superior title of the owner : for when the note got back into the broker's hands it became his duty, as broker, to hold it for Wm. E. Hooper & Sons, from whom he had first received it.

ALVEY, J., delivered the opinion of the Court.

This is an action of trover brought by the appellant against the appellees to recover the value of a promissory

note for $5000, which had been pledged to the appellant by a certain James A. Hooper, as collateral security for a loan of money obtained by him.

The note was made by the appellees, payable to their own order at four months, and by them indorsed in blank, and in that condition they delivered it to James A. Hooper, a note and bill broker, to be sold for their account, with instructions not to sell it at a greater rate of discount than five and a half per cent. per annum. James A. Hooper attempted to sell the note to the appellant at the rate of discount fixed by the makers, but as the appellant was not willing to buy it at a rate of discount less than six per cent. per annum, the attempt failed. Afterwards James A. Hooper obtained a loan from the appellant of $5000, on his own account, and deposited the note in question as collateral security therefor; and the day after this loan the note was allowed to be withdrawn from the bank by James A. Hooper, to be disposed of by him, but with the understanding and agreement, as alleged by the appellant, that he should hold the note as the property of the appellant if not sold on the day he obtained it, and in case he did sell it, he would return the proceeds of sale to the appellant on the same day. The note was not sold by James A. Hooper, nor was it returned to the bank; but he returned it to the appellees, by whom it was destroyed. On the day the note was withdrawn from the bank James A. Hooper failed, and he afterwards went into bankruptcy. And upon all the facts of the case the questions are, 1st, whether the appellant, in accepting the note as collateral security for the loan to James A. Hooper, acquired a good title thereto as against the appellees? and 2ndly, if a good title was acquired, whether it was not lost by the surrender of the note to James A. Hooper, under the circumstances in proof?

At the trial below, upon all the proof produced, the appellant offered three prayers for instruction to the jury, and the appellees offered ten. Of those offered by the appellant the Court granted the first and rejected the other two; and of those offered by the appellees the second and tenth were granted and all the others rejected. The appellant excepted to the rejection of its two prayers, and the granting of the two on the part of the appellees; and whether the Court was right in its rulings on these four prayers we are now required to determine.

The second and third prayers of the appellant presented substantially the same question, only varied in the form of stating it. By the first of these the Court was asked to say to the jury, that in order to affect the title of the bank to the note in controversy, it was necessary to show that it acted in bad faith in taking the note from James A. Hooper, and that there was no evidence in the case legally sufficient to show such bad faith; and in the next, the Court was prayed to instruct that there was no evidence in the case legally sufficient to show that the bank, at the time of making the loan mentioned in the evidence, had knowledge or notice of any limitation of the authority of James A. Hooper to deal with the note in question.

It is certainly true, if a bank or other party take a negotiable bill or note before maturity, for consideration and without *mala fides,* such party acquires a good title, notwithstanding there may have been negligence; and gross negligence even, while it may be evidence of *mala fides,* will not alone be sufficient to defeat the plaintiff's title. This is now the settled principle in England, and, generally, in this country, and it has been fully adopted in this State. In the recent case of *Maitland vs. Citizens' National Bank,* 40 *Md.,* 540, 568, where this question was last under consideration, this Court declared that nothing less than proof of knowledge of facts that showed the want of authority of the party transferring the note would be

sufficient; that the plaintiff was not bound to make inquiry, and mere negligence, however gross, not amounting to wilful and fraudulent blindness, while it would be evidence of *mala fides*, was not the same thing. And it can make no difference, in the application of the principle, that the bill or note is only pledged as collateral security, and not absolutely and unconditionally transferred; for, in such case, the pledgee acquires a property in the bill or note, and is not liable in trover, to the real owner, as in the case of goods improperly pledged. *Collins vs. Martin*, 1 *Bos. & Pul.*, 648; *Treuttel & Wurtz vs. Barandon*, 8 *Taunt.*, 100; *Byles on Bills*, 126.* Therefore, if the note in question was deposited with the appellant as collateral security by James A. Hooper, without knowledge or *mala fides* on the part of the appellant, as to the want of authority in James A. Hooper so to deal with the note, it is clear, the appellant acquired good title to the note as against the appellees; and the present action would be maintainable, provided the appellant did not, by any subsequent dealing, relinquish the title thus acquired.

But the question is, on the prayers of the appellant, whether there was evidence legally sufficient to be submitted to the jury from which they could find that the appellant had knowledge, at the time of the transaction, that the note did not belong to James A. Hooper; for if the appellant had such knowledge the note was not taken *bona fide* and no title, as against the appellees, was acquired by the pledge. And, upon careful examination of the evidence as set out in the record, we think it was legally sufficient to be submitted to the jury upon the question of notice.

Mr. Guest, the appellant's cashier, proved, that on the 16th of March, 1875, James A. Hooper, who was well known to the appellant to be a stock and bill broker, whose business it was to sell paper for other people to

those who would buy, and who was well known at the time to be insolvent, and against whom the bank had a large debt which had been charged off to profit and loss, "offered us," to use the language of the witness, "a note for $5000, for sale, at the rate of five and a half per cent. per annum. I declined to buy it at that rate, but offered to buy it at the rate of six per cent. per annum. Afterwards, and on the same day, he applied for a loan of $5000 on that note, and a $100 bond, as security. We agreed to let him have the loan, and the sum of $5000 was passed to his credit. The note was a note for $5000, signed by Wm. E. Hooper & Sons, drawn in blank or payable to their own order, and by them indorsed in blank. The next day, the 17th of March, the note and bond were returned to James A. Hooper, on an understanding had before with him, that whenever collaterals were so deposited, they might be withdrawn by him next morning, he agreeing if his account was short at 3 o'clock, to replace the collaterals or their proceeds." Mr. Guest further testified, that, on the day of James A. Hooper's failure, being the 17th of March, he inquired for the note, and he says : "I told him I supposed the note belonged to Wm. E. Hooper and Sons, or 'you got it from them,' or to that effect, but he made no answer." And again, the same witness states, that his impression was that Wm. E. Hooper & Sons had limited James A. Hooper in the sale to six per cent., and that he wanted to sell at five and a half to make the one-half per cent. commission. And in addition to this, the same witness states, that the entire bank account against James A. Hooper, including the loan on the 16th of March, 1875, was proved in the proceedings in bankruptcy as an unsecured debt. These facts and circumstances, bearing upon the question, were elicited from the witness of the appellant, and that witness himself the officer of the bank with whom the transactions were had. But James A. Hooper was produced and examined as a witness for both sides ; and in his

examination by the appellees, he testified that he offered to sell the note to the appellant a day or two before his suspension, and that Mr. Guest, the appellant's cashier, offered to buy it at the rate of six per cent. per annum. He says, "I told Mr. Guest I was limited to five and a half and I could not sell it at six; and that, of course, Mr. Guest knew that if I held the note myself I could not be limited in price. Mr. Guest knew the character of my business." This witness disproves entirely the existence of any contract or arrangement for the return of the collaterals or their proceeds.

With this evidence in the case, we think the Court below committed no error in rejecting the two prayers of the appellant. While the evidence did not go to the direct proof of knowledge as to the real ownership of the note at the time of its deposit with the bank, yet the circumstances are strong from which a jury might find the fact of such knowledge; or, at any rate, they could well conclude that the appellant had knowledge at the time of the deposit of the note that it was not the property of James A. Hooper, to whom the loan was made. The note was placed in the hands of James A. Hooper to be sold for account of the makers and indorsers; and, as we have already stated, if the appellant knew that the note was not the property of James A. Hooper, the taking of the note by way of collateral security for a loan to the agent imparted no title as against the principal. *Treuttel & Wurtz vs. Barandon,* 8 *Taunt.,* 100.

And now, turning to the prayers of the appellees which were granted, we find no error in them. The second prayer put the plain proposition, and that only, which we have just stated, in reference to the effect of notice upon the title acquired by the pledgee. In regard to this we think there ought to be no question. Nor is the proposition involved in the appellees' tenth prayer, also granted, less free from doubt. Indeed, we do not understand it to

be seriously questioned by the appellant's counsel. It is a well established principle that possession is necessary to perfect a title by pledge, and it is equally well settled that the delivery back of the possession of the thing pledged, by the act or with the consent of the pledgee, terminates his title, unless it be delivered back for a temporary purpose only, or to the pledgor to be held in a new character, such as special bailee, or agent. *Sto. on Bailm., sec.* 299. "If the pledgee," says the author just referred to, "yields up the possession of the pledge to the pledgor, or consents that the latter shall alienate it, or pledge it to another person, either of these acts will amount to a waiver of his right to the pledge." *Sto. on Bailm., sec.* 364. This is the single principle embodied in the appellees' tenth prayer, and it is abundantly supported by authority.

In conclusion we may say, that by the several prayers which were granted, it would appear that the jury were fully and fairly instructed as to the law of the case, and upon review we discover nothing for which the judgment should be reversed.

*Judgment affirmed.*

(Decided 13th June, 1877.)