(Decided 15th March, 1888.)

---

ERNAULT H. WILLIAMS vs. GEORGE A. HUNTINGTON.

*Promissory note—Failure of Consideration—Fraud—Burden of Proof—Purchase of Note at a Discount—Good faith—Bona fide Purchaser of Promissory note—Amount of Recovery.*

Where in an action on a promissory note, by an endorsee against the maker, it is shown that the note was obtained without consideration by the original payee, and that he transferred it fraudulently, and

against the express protest of the maker, it is incumbent upon the plaintiff, to entitle him to recover, to establish by proof that he is the *bona fide* owner of the note; that he acquired it for value before maturity, and without notice or knowledge of any infirmity in its origin or its transfer.

While the mere fact that a note has been purchased at a discount will not, ordinarily, be evidence of bad faith, yet where the discount is very large, that circumstance may be considered, in connection with other facts, in determining the question of the purchaser's good faith.

An instruction to the jury that in determining whether the plaintiff acted in good faith in purchasing the note in suit, they might consider the circumstances in the knowledge of the plaintiff at that time, and, if they should find that there was anything in those circumstances calculated to excite the suspicion of a reasonable man who desired to avoid participation in the circulation of a fraudulent note, and calculated to cause such a man. to make proper inquiries as to its *bona fides*, and that plaintiff failed to make such inquiries, that then they might infer want of good faith from such conduct, is rightly refused ; the fraud or bad faith in the purchase of the note being a question to be determined from all the facts attending the transaction, without reference to the supposed or assumed conduct of others if situated as the purchaser was.

The purchaser of a promissory note in good faith, before maturity, for value, without notice or knowledge of any defects in it, is entitled to recover the full amount of the note from the maker, although he may have paid less than its par value therefor.

APPEAL from the Court of Common Pleas.

The case is stated in the opinion of the Court.

*Exception.*—The plaintiff offered one prayer which is stated sufficiently in the opinion of the Court. The defendant offered three prayers, the second and third of which are stated in the opinion of the Conrt, and the first is as follows :

1. That if the jury find from the evidence that the note sued upon in this case, dated the 20th of February, 1884, was one of several notes given by the said defendant to one

Andrew J. Guise, for the purpose of disposing of the same for the benefit of said Williams, and that no consideration was received at the time by said Williams for making and delivering the said note to the said Guise, and that subsequently and while the said note was still in the possession or under the control of said Guise, the said Guise was requested by the wife and counsel of said defendant, acting for him and in his behalf, to surrender the same, but refused so to do, and retained the same, and after the 10th day of February, 1885, against the wishes and without the knowledge of the defendant, disposed of said note for his own, the said Guise's, benefit. and purposes, and without paying over or accounting for the proceeds of said note or the consideration received therefor to the said defendant, then their verdict must be for the defendant; unless they shall further find that the plaintiff purchased the said note before maturity for value and in good faith, and without any knowledge that said note had been so improperly or fraudulently procured and disposed of.

The Court (BROWN, C. J.,) granted the prayer of the plaintiff, and rejected the prayers of the defendant. The defendant excepted, and the judgment being against him he appealed.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, ROBINSON, IRVING, BRYAN, and MCSHERRY, J.

*W. L. Marbury*, and *Charles Marshall*, for the appellant.

It is conceded that after the plaintiff had proved the execution of the note, and the endorsement thereof to himself, he might have rested his case; and from this simple proof of hand-writing there would arise the legal presumption that he had purchased the note, before maturity, for value, in *good faith*, and without notice of any fraud in its obtention or endorsement. But instead of relying upon the legal presumption that he was a *bona*

*fide* holder, &c., he undertook to establish that fact by testimony in the beginning and before any evidence had been offered on the part of the defendant. From the moment that he did this, the question of his *bona fides, vel non* and of all the other facts, including the fact that he gave value, &c., upon which his right to recover depended, became no longer a question of *presumption,* but a question of *evidence.* In other words, there was no longer any presumption in the case upon which he could rely, and he must succeed upon his evidence, or not at all. See *Herrick & Burnside vs. Swomley,* 56 *Md.,* 440–466.

This evidence the jury had a perfect right to believe or disbelieve according to their opinion of its credibility ; and, even if it were conceded that there was no affirmative evidence in the case to the contrary, the Court had no right to take away from the jury the question of its sufficiency. *Charleston Ins. Co. vs. Corner,* 2 *Gill,* 426.

When the defendant has once shown that the note was procured from him by fraud, he may, if he pleases, rest there, and leave it to the plaintiff to prove the several facts necessary to give him a right to maintain his suit upon such a note; among which facts are *bona fides* on his part in the purchase of the note, and the fact that he took it without notice of the fraud. Under these circumstances the whole burden of proof is shifted from the defendant to the plaintiff, and the defendant does not have to go any further, but must succeed if the case is then closed without the plaintiff having offered evidence to prove that he took the note *bona fide* for value without notice of the fraud. *Totten vs. Bucy,* 57 *Md.,* 446.

Even upon the assumption that the plaintiff's testimony, with reference to his own *bona fides* in purchasing, is uncontradicted, the jury were not bound to believe him. *Charleston Ins. Co. vs. Corner,* 2 *Gill,* 426; *Franklin Fire Ins. Co. vs. Hamill,* 6 *Gill,* 96, and cases collected in the note to 2 *Gill,* 277, *Brantly's Edition.* See also *Monroe*

*vs. Cooper,* 5 *Pick.,* 413 ; *Worcester County Bank vs. Dorchester Bank,* 10 *Cush.,* 490, 491 ; *Smith vs. Braine,* 14 Q. B., N. S., 244 ; *Hall vs. Featherstone,* 3 *Hurlst. & Nor.,* 284 ; *Randolph on Commercial Paper,* secs. 1025, 1026.

Proof that the plaintiff paid value for the note is not sufficient in cases of this kind. He must at the same time prove that he acted in good faith. 1 *Daniel on Negotiable Ins.,* (2d *Ed.,*) sec. 770.

Although it is now settled that failure to make inquiry is not the same as *mala fides,* and does not preclude recovery by the holder of a note, yet it is equally well settled that while "gross negligence in the purchaser is not tantamount to fraud, *it may be given in evidence to the jury to prove fraud."* *Worcester County Bank vs. Dorchester County Bank,* 10 *Cush.,* 491.

Again, it is conceded that "fraudulent blindness" on the part of the purchaser is *mala fides,* that is to say, it has the same effect as proof of actual knowledge of the fraud. *Maitland vs. Citizens' Nat. Bank,* 40 *Md.,* 569. See 1 *Danl. on Negotiable Instruments,* sec. 795, (3d *Ed.*)

"When the execution of a bill or note has been induced by fraud, the *bona fide* holder of it for value, and without notice, is entitled to be protected against a loss which would befall him, if the party defrauded were to be permitted to set up the defence of fraud on the part of the payee against him. But it does not, therefore, follow that he may recover of such party the whole amount, when he has paid a less sum. For his protection and security against loss, it is only necessary that he should be paid back the amount which he was induced to give for the instrument by its appearance of validity ; and therefore such amount is the limit of his recovery against the drawer or maker who was defrauded into the execution of the instrument." 1 *Danl. on Nego. Inst.,* 758, (3d *Ed.*) ; *Todd vs. Shelbourne,* 8 *Hun,* 512 ; *Holcomb vs. Wyckoff,* 35 N. J. L. R., 38 ; *Harger vs. Wilson,* 63 *Barb.,* 237 ; *Eastman*

*vs. Shaw*, 65 *N. Y.*, 522 ; *Daniels vs. Wilson*, 21 *Minn.*, 530 ; *Story on Bills, sec.* 188, *and cases cited ; Holeman vs. Hobson*, 8 *Humph. (Tenn.,)* 127 ; *Collger vs. Francis*, 58 *Tenn.*, 423 ; *Sauerwein vs. Brunner*, 1 *Harr. & G.*, 478 ; *Cockey vs. Forrest*, 3 *Gill & J.*, 483.

*J. Alexander Preston*, for the appellee.

The prayer granted by the Court is identical with the prayer which met the approval of this Court in the case of *Crampton vs. Perkins*, 65 *Md.*, 22. See *Totten vs. Bucy*, 57 *Md.*, 446 ; *Cecil Bank vs. Heald*, 25 *Md.*, 562 ; *Maitland vs. Citizens' Nat. Bank*, 40 *Md.*, 568 ; *Cromwell vs. Sac*, 96 *U. S.*, 51.

McSHERRY, J., delivered the opinion of the Court.

The cause of action in this case is a promissory note dated February the twentieth, eighteen hundred and eighty-four, signed by the appellant and payable in fifteen months after its date to Andrew J. Guise and Company, for twenty-five hundred dollars. It was endorsed by the payee to the order of W. H. Harrison, from whom the appellee claims to have purchased it in good faith, without knowledge or notice of any infirmity, two months before its maturity, for eighteen hundred and fifty dollars. Harrison endorsed the note in blank. Upon the trial in the Court below after all the evidence had been submitted, the appellee presented one prayer and the appellant three. The Court of Common Pleas granted that of the appellee and rejected all of the appellant's. From these rulings, the judgment being against him, the defendant has appealed.

By the instruction granted at the instance of the appellee the jury were directed that if they should find that the defendant signed the note ; that Guise endorsed and passed it to Harrison ; that Harrison passed it to the plaintiff, for a valuable consideration before said note became

due, and that plaintiff purchased the note without notice of any fraud in the obtention of said note or in the indorsement, or of any failure of consideration ; then the plaintiff would be entitled to recover the full amount of the note, and that "there is no .evidence in the case legally sufficient from which they can find that the plaintiff had any knowledge or notice of fraud or want of consideration in the making of said note, or in the indorsement thereof to said Harrison."

At the trial it was shown that this note, together with two others, each for the like amount, and another for eight hundred dollars, had been signed by the appellant and made payable to Guise, and that they had been delivered to the latter without any consideration whatever. According to one version of the transaction Guise was to raise the money on these notes, and after deducting five per cent. commissions, he was to pay the net proceeds to the appellant; but according to Guise's own testimony the appellant was indebted to him in the sum of twenty thousand dollars for alleged services rendered the appellant in some other business affair. The nature of these services is best stated in the language of Guise himself: He says, "On several occasions I had occasion to go into Mr. Williams' office, and I there met him" (the appellant) "one day, and he picked up off the table a piece of paper which afterwards proved to be a deed ; I read it over ; it was a very short paper, and he said his father and Mr. Orville Horwitz wanted him to sign that deed ; I read it carefully and I said 'Ernie, if you do that you will sign away your patrimony.' He said he would never do it unless he was crazy or drunk; the result was that they did spirit him away to Europe ; when he came back he came right back to me ; I advanced some more money ; he told me about the young lady he was about to marry, and I think they both came to see me frequently." "And these are the services for which you claim twenty thousand dollars ?" "I

do." It appeared further that Guise was destitute of means, a borrower of small sums of money, and a man without any business occupation ; though at one time he had been a Court bailiff. Before he indorsed this note to Harrison he was warned by the appellant and by others, not to negotiate it, and a demand was made upon him to surrender all of these notes because the whole transaction was a swindle, and because the appellant "had been trapped—tricked into giving these notes without any due consideration." He even entered into negotiations with the wife of the appellant for the return of these notes in consideration of the payment by her to him of the sum of one hundred and fifty dollars. After this he made the indorsement to Harrison, but upon what consideration, if any, does not appear ; and subsequently the appellee, after first being shown the note on the street, and after making inquiries from Guise in regard to it, purchased it. The appellee says that Harrison was "a kind of real estate broker, agent, and so on," and that he, the appellee, was engaged in the business of making books on horse races, and that he bought paper and notes.

It has been explicitly decided by this Court in *Totten vs. Bucy*, 57 *Md.*, 452, that where the defendant shows that the note sued on had been tainted in its inception or indorsement with fraud, or had been procured without consideration, or lost or stolen before it came to the possession of the holder, the burden of proof is shifted, and it then is "incumbent upon the plaintiff to show that he acquired the note *bona fide*, for value, in the usual course of business, before maturity, and under circumstances that create no presumption that he knew of the existence of the facts that impeached the validity of the instrument." It is obvious from the brief statement which we have made of the facts bearing upon this branch of the case, that there was evidence before the jury tending to show that the note was obtained without any consideration whatever,

and further establishing the fact, without contradiction, that the note was passed by Guise fraudulently, without authority, and, indeed, contrary to the express protest of the appellant. The appellee was, therefore, obliged, before he could legally recover, to establish by proof that he was the *bona fide* owner of the note ; that he acquired it for value before maturity, and without notice or knowledge of any infirmities in its origin or its transfer. In discharge of the burden thus cast upon him, the appellee offered his own testimony and none other. Its credibility was wholly for the jury to determine. They were at liberty to disregard it altogether, if in their judgment it was intrinsically improbable, or if it was stamped with, or inherently furnished, indications of its unreliability. But the Court in instructing the jury that to entitle the plaintiff to recover they must find that he was such *bona fide* purchaser before maturity for value, without notice ; at the same time also explicitly told them that there was no evidence from which they could find that he had any notice or knowledge of fraud, or want of consideration in the making of said note or in the indorsement thereof. The last clause of this instruction was erroneous, because there was evidence before the jury from which they might have legally inferred that the appellee was not the *bona fide* owner of the note, for value, before maturity and without notice. He was not engaged in the business of buying notes, and he did not acquire this one in the usual course of business. Gambling was his occupation; he bought but one other note about the same time he purchased this one, and it also was a note made by the appellant. He purchased both at very heavy discounts, one at nearly thirty per cent. only two months before its maturity, and the other at over fifty per cent. Whilst the mere fact that a note has been purchased at a discount, will not, ordinarily, be evidence of bad faith; yet where that discount is very large, the circumstance may be considered,

in connection with all the other facts, in determining the question of the purchaser's good faith. *Stewart vs. Town of Lansing*, 104 *U. S.*, 505. The appellee knew, he says, when buying the note purchased at a discount of over fifty per cent. that he was buying a law suit; though why he knew this he does not explain further than to state that it was a note payable on demand. But that fact did not, of itself, involve or imply a law suit. This statement of his is only capable of explanation upon the assumption that he had received information from Guise that there were such infirmities attaching to the note as would naturally cause payment to be resisted. He knew Guise and he was aware that he was a man without means and without occupation, and that he was entirely unlikely to have honestly in his possession such a large amount of negotiable paper; or, having it, equally unlikely to dispose of it honestly so near its maturity at such ruinous rates of discount, at the very time he was assuring the appellee that the note "was as good as gold." The appellee also knew Harrison, and he knew him likewise to be so devoid of means as to be compelled to borrow small sums of money, and he must therefore have known that it was wholly improbable that he would or could be the owner of a promissory note for so large an amount of money. The peculiar and unusual manner in which, and the place where, he was first approached by Harrison to buy the note, and the subsequent interviews at the appellee's house, and the visit by the latter to Guise before the purchase, strongly impress upon the whole transaction the characteristics of a fraudulent confederacy. And this is made more striking by the failure to produce Harrison as a witness or to account for his absence. It was perfectly competent for the jury by bringing these three parties together—the payee, the indorsee and the holder—as the record presents them, to find, from the evidence before them, that the transfer of the note by Guise was a mere

scheme and device to place the note in a position where it would be difficult to assail it; and to further find that Harrison and the appellee were participants in and parties to that scheme and that device. We, therefore, think that the concluding portion of the instruction was erroneous. The jury should have been allowed to pass upon the question of the appellee's *bona fides*, and upon the further question as to whether he had notice or knowledge of fraud in the inception and in the transfer of the note.

Inasmuch as the first prayer presented by the appellant placed the burden of proof upon the appellee to show *bona fides*, in his purchase of the note, in the event of the jury finding the circumstances indicative of the existence of imperfections in its indorsement, we think, for the reasons already assigned, that it correctly presented the law of the case in this respect, and that it should, consequently, have been granted. It places the burden of proof where the law requires it to rest, under such circumstances, and forbids a recovery unless the holder of the note satisfied the jury that he was the *bona fide* owner for value before maturity, without notice or knowledge. There is no room to doubt the correctness of this prayer under the authority of *Totten vs. Bucy* and the cases there referred to. The refusal of the Court to grant it was such an error as requires a reversal of the judgment.

By the second prayer of the appellant the Court was asked to instruct the jury, to the effect that in determining whether the plaintiff acted in good faith in purchasing the note, the jury might consider the circumstances in the knowledge of the plaintiff at that time, and if they should find that there was anything in those circumstances calculated to excite the suspicion of a reasonable man, who desired to avoid participation in the circulation of a fraudulent note, and calculated to cause such a man to make proper inquiry as to its *bona fides*, and that plaintiff failed to make such inquiries, that then they might infer want

Williams *vs.* Huntington.

of good faith from such conduct. The action of the Court in rejecting this prayer was without error. It is true that at one time this doctrine obtained the sanction of the Courts, (*Gill vs. Cubitt*, 3 *Barn. & Cres.*, 466;)but it was soon questioned (*Backhouse vs. Harrison*, 5 *Barn. & Ad.*, 1098,) and was finally distinctly overruled. (*Goodman vs. Harvey*, 4 *Adol. & Ell.*, 870.) *In Murray vs. Lardner*, 2 *Wall.*, 110, the leading cases on both sides of this question are fully and ably reviewed. The Supreme Court states the law on this subject in these words : "Suspicion of defect of title, or the knowledge of circumstances which would excite such suspicion in the mind of a prudent man, or gross negligence on the part of the taker, at the time of the transfer, will not defeat his title. That result can be produced only by bad faith on his part." " The rule laid down in the class of cases of which *Gill vs. Cubitt* is the antitype, is hard to comprehend, and difficult to apply. One innocent holder may be more or less suspicious under similar circumstances at one time than at another ; and the same remark applies to prudent men. One prudent man may also suspect where another would not, and the standard of the jury may be higher or lower than that of other men equally prudent in the management of their affairs. The rule established by the other line of decisions had the advantage of greater clearness and directness." The same rule was applied by this Court in *Totten vs. Bucy*, where it is said : "The question is not what facts the knowledge of which will or will not be sufficient to put the party on inquiry ; but the question is, whether the party had knowledge of the infirmity of the note at the time of the transfer to him ; or, in other words, whether he procured the note in good faith for valuable consideration." See also *Com. & Farm. Nat. Bank vs. First Nat. Bank*, 30 *Md.*, 11. See also *Cromwell vs. County of Sac*, 96 *U. S.*, 51. The question is one of fraud or bad faith on the part of the taker of the note, and that is as

susceptible of proof by circumstantial as by direct evidence. If it is sought to be established by the former medium of proof, its existence is simply a conclusion drawn from all the facts offered in evidence; and that conclusion cannot be made to depend upon any such uncertain and fluctuating standard as the supposed conduct, under similar circumstances, of prudent men, or the suspicions that such men might entertain. All the facts attending the transaction are admissible in evidence; and from those facts, without reference to the supposed or assumed conduct of others if situated in the same way, the jury are to find the fact alleged—the imputed fraud or bad faith—if it can be fairly and reasonably inferred therefrom. There was therefore no error committed by the rejection of this prayer.

By the third prayer the Court was asked to instruct the jury, that if they should find that the note was procured by fraud or was fraudulenly negotiated, then, even though they should find that the plaintiff purchased the note before maturity in good faith, for value, without notice as to such fraud, the plaintiff would only be entitled to recover the amount actually paid for the note, with interest in the discretion of the jury.

There was no error in the rejection of this prayer. It must be admitted, however, that there is some diversity of opinion with respect to the legal proposition it asserts. That proposition is broadly stated in 1 *Dan. Neg. Instruments, sec.* 758, and in 2 *Randolph on Com. Paper, sec.* 452; but it seems to us that the authorities quoted or referred to by these authors do not, with a few exceptions, support the text. In our opinion the weight of authority and the reason of the law are decidedly the other way. It would protract this opinion to an unreasonable length if we were to review each of the cases relied on by the appellee, and each of those referred to by the text-writers; but it may be stated as the result of a careful examination

of them, that, with but few exceptions, they may be classified under three heads; viz., first, cases where the note sued upon had been taken *bona fide* as collateral security for a less amount from a party who held it subject to equities or defences; second, cases where the consideration agreed to be paid for the purchase of the note, had been paid only in part, without notice or knowledge of the infirmities attaching to the note, and the residue of the consideration had been paid *after* the purchaser received such notice; and, third, where the note has, under the provision of some statute, been declared void because tainted with usury.

Of the first class the case of *Allaire vs. Hartshorne*, 1 *Zab.*, 663, is an illustration. In that case Hartshorne sued Allaire on a note of fifteen hundred dollars at ninety days, made by Allaire. The note had been misapplied by one Pettis, to whom it had been intrusted. He pledged it to the plaintiff as a security for seven hundred and fifty dollars borrowed on Hartshorne's check, and also as security for a four hundred dollar acceptance. The Court charged the jury that if any consideration was given by the plaintiff for the note, " they should not limit their verdict to the amount so given, but should find the whole amount due on the face of the note." The case was carried to the Court of Errors and Appeals of New Jersey. The Court reversed the judgment and held that, although a *bona fide* holder, Hartshorne could recover only the amount of his advances. The case of *Dresser vs. Missouri and Iowa Railway Const. Co.*, 93 *U. S.*, 92, belongs to the second class. In this class of cases the Courts have limited the recovery to the sum paid *before* the purchaser was chargeable with notice of the infirmities of the note; and have refused to allow a recovery of the sum paid *after* obtaining such notice, upon the ground that as to the sum last paid he was not a *bona fide* purchaser without notice.

The case of *Eastman vs. Shaw*, 65 *N. Y.*, 522, and the case of *Sauerwein vs. Brunner*, 1 *Harr. & G.*, 478, fall within the third class.

Neither of these classes of cases is applicable here. Those which are directly in point are so opposed to the fundamental principles governing the transfer of and the acquisition of title to commercial paper, and are so emphatically repudiated by the very highest authority that we do not feel warranted in following them.   Commercial paper may be sold and bought for what it will bring.   One who buys it in good faith before maturity for value, without notice or knowledge of any defects in it, acquires a title to it good against the world.   *Murray vs. Lardner, supra.*   The title thus purchased is not a title to a part of the note, but to the whole note.   Such a purchaser becomes the absolute owner of it with every incident and right of complete ownership.   But the doctrine of the prayer we are considering, limits and qualifies the purchaser's title and ownership, and, though he may have acted in the most absolute good faith, restricts his right of recovery to the sum actually paid by him for the instrument.   The adoption of such a doctrine would, in a great measure, fetter and impede the negotiability of all commercial paper sold at a discount, and would require the purchaser, for his own protection, to make inquiry in regard to the origin and transfer of the note—or to take it, without such inquiry, at his peril.  This would be disastrous in its consequences, and is in direct opposition to the best considered cases.   In the case of *Dresser vs. Missouri & Iowa Railway Const. Co., supra,* suit was brought by a *bona fide* indorsee against the maker, and it was shown that the holder agreed to purchase before maturity and in good faith; that he paid part of the purchase money but before paying the residue he was made aware of the fraud through which the note was procured, but notwithstanding that knowledge he paid the residue.   He claimed, however,

that he was entitled to recover in full; but he was restricted to a recovery of the amount paid before receiving such notice. The Court uses this language: "The argument of the plaintiff in error is that negotiable paper may be sold for such sum as the parties may agree upon, and that, whether such sum is large or small, the title to the entire paper passes to the purchaser. This is true, and if the plaintiff had bought the notes in suit for five hundred dollars before maturity and without notice of any defence, and paid that sum, or given his negotiable note therefor, the authorities cited show that the whole interest in the notes would have passed to him, and he could have recovered the full amount due upon them." This same question is also very fully considered by the Supreme Court of the United States in *Cromwell vs. County of Sac*, 96 *U. S.*, 51. That was a case where bonds issued by a county and alleged to be tainted with fraud in their inception, were purchased in good faith without notice of the fraud, before maturity for a sum below their par value; and it was insisted that the holder could only recover the amount paid by him and not the face value. The Court says, "we are of opinion that a purchaser of a negotiable security before maturity, in cases where he is not personally chargeable with fraud, is entitled to recover its full amount against the maker, though he may have paid less than its par value, whatever may have been its original infirmity. We are aware of numerous decisions in conflict with this view of the law; but we think the sounder rule, and the one in consonance with the common understanding and usage of commerce, is that the purchaser, at whatever price, takes the benefit of the entire obligation of the maker. * * * * This rule in no respect impinges upon the doctrine that one who makes only a loan upon such paper, or takes it as collateral security for a precedent debt, may be limited in his recovery to the amount advanced or secured." We do not deem it necessary to allude to other cases upon this subject.

Balto. & Ohio Railroad Co. *vs.* Patterson, *et al.*

For the errors indicated in granting the instruction of the appellee taking from the jury the question of the appellee's *bona fides* in acquiring the note, and in rejecting the first prayer of the appellant, the judgment must be reversed and a new trial will be awarded.

*Judgment reversed,*
*and new trial awarded.*

(Decided 15th March, 1888.)