# CIRCUIT COURT NO. 2 OF BALTIMORE CITY

Filed December 18, 1891.

ADALINE DARLING

VS.

WM. M. BUSEY, ET AL.

*Charles J. Bonaparte* and *John C. Rose* for complainants.

*Samuel Snowden* for the defendants.

PHELPS, J.—

There can be no doubt that the plaintiff's signature to the short assignment at the foot of the Batory mortgage, dated November 6th, 1885, was obtained by the fraud of her counsel, the defendant Busey. Deceived by his misrepresentations, she was induced to believe that she was merely going through a necessary form to signify her assent to a renewal of the mortgage. Busey appears by some means to have succeeded in possessing himself of the confidence of his client to an unlimited extent. She was a widow of mature age, and not illiterate. The assignment was quite legibly written and if she had but taken the trouble to glance at its first line, she would have seen what it was she was directed to sign.

From this circumstance, in connection with some inconsistency in matter of detail, particularly as to time, between the averments of her bill and the plaintiff's testimony, and also the fact that the paper was witnessed by a magistrate, it was contended in argument on behalf of defendants that she really knew the purpose of the instrument. But it is impossible to reconcile their theory with facts which are proved beyond all controversy. The wickedness of the fraud is made perfectly clear by Busey's subsequent resort to a common device of swindlers, of which we have had more than enough of late. For nearly three years after he raised the money on this assignment, he continued paying pretended interest to the plaintiff on this mortgage, with semi-annual regularity. If further proof were necessary, it is furnished by his falsehoods and tricks to delay discovery and his flight when detected. The plaintiff now claims that this was an act not only of a fraud, but forgery; that the crime of forgery may be committed by other means than the counterfeiting of a signature; that the procuring of a genuine signature by fraud is one of those means; that, consequently, the forged assignment was an absolute nullity, and that the defense of bona fide purchase for value without notice is, in such a case, of no avail.

She has therefore joined with Busey as co-defendants, not only her immediate assignee, Ogden A. Kirkland, who she charges with constructive notice, but also the mortgagors, Batory and wife, who subsequently paid off the mortgage and took Kirkland's release and several later purchasers under the Batorys. The relief prayed is cancellation of the assignment and release, a decree *in personam*, against Kirkland and Batory, the establishment of her mortgage as a valid subsisting lien and a sale of the mortgaged property. There is a vague charge in the bill, of constructive notice as against the Batorys, but no evidence whatever to support it. There is not even a charge of notice as against the sub-purchaser.

A proposition so far-reaching in its effect upon the public records; naturally challenges close investigation; and the first step is to ascertain the precise legal character of the transaction with Kirkland, whether it is to be regarded as a conveyance of an interest in land, or as a transfer of negotiable paper.

It was made a question in argument whether the principal mortgage note was endorsed by the plaintiff, and was passed by Busey to Kirkland at the time of the delivery of the assignment. There is really no room for doubt on that point. Innocently, but unfortunately, Batory destroyed all the paid mortgage notes, when he got his release.

Partly from direct proof, and partly from legitimate inferences the uncontradicted evidence is that Busey, from the time the mortgage was made, 18th of July, 1883, had in his custody all the notes secured thereby, the $1,500 principal note and the six interest notes, with the plaintiff's genuine endorsement upon every one of them in blank. As the interest notes matured at intervals of six months, Busey deposited them in bank for collection. The possession by Busey of the principal notes for three years, endorsed in blank, and its delivery by him either to Kirkland or his attorney for him, at the time the assignment of mortgage was consummated, may be regarded as an established fact. This was about eight months before the maturity of the note. The plaintiff's endorsement was unquestionably genuine. There is no charge in the bill and no proof that it was forged. Now it is well settled that a bona fide purchaser of negotiable paper, no matter how acquired by the vender, is protected by the *lex mercatoria*.

The vendor may be a burglar, selling the spoils of crime, and yet may confer a perfect title upon an innocent purchaser, good as against the robbed owner. Murray vs. Laidner, 2 Wall 110; Hotchkiss vs. Banks, 21 Wall 354. In such a case mere circumstances of suspicion, enough in the case of the sale of a chattel or of an interest in land to put a purchaser upon inquiry, will not avail the owner. The purchaser is not bound to make inquiry. Even gross negligence not amounting to wilful and fraudulent blindness, will not defeat the title of a purchaser for value. There must be not constructive, but actual knowledge on his part. This knowledge, like any other fact, may be proved by circumstantial evidence, but when proved, the knowledge must be such as to clearly show fraud, Bank vs. Hooper, 47 Md. 98. Totten vs. Bucy, 57 Md. 451; Maitland vs. Bank, 40 Md. 569; Williams vs. Hunting, 68 Md. 601-602; Tailaferro vs. Bank, 71 Md. 210.

It is an elementary principle of equity pleading that in all cases where fraud is relied on. The fraud must be distinctly charged in the bill, and the facts must be set forth upon which the charge is founded. Kerr on Fr.,

365 (Am. Ed.); Ad. Ed., 303 (8th Am. Ed.).

The bill in this case, as concerns the defendant, Kirkland, is framed upon the theory of constructive notice, founded upon a failure to exercise ordinary care in making inquiry. Fraud on his part in taking the assignment is not charged in the bill, nor was it understood to be claimed in argument. It is therefore not an issue in the case, and the circumstances of suspicion that have been so ably urged in behalf of the plaintiff as sufficient to have put Kirkland upon further inquiry, or even to show his gross negligence, and which might have been available to charge him with constructive notice in the case of an assignment of a chattel, a chose in action, or an interest in land, cannot, under the authorities cited, be held to defeat the holder of negotiable paper, whose good faith is not impeached. Was the promissory note in this case deprived of this attribute of commercial paper, because secured by a mortgage.

The doctrine that the debt is the principal and the mortgage the incident, is too familiar, says the Court of Appeals, to require citation of authority. Hewell vs. Coalburn, 54 Md. 63.

When the debt is represented by a promissory note, the mere endorsement of the note carries the mortgage security, whether the mortgage be formally assigned or not. In fact, it is not necessary in such case that there should be any assignment of the mortgage as a conveyance at all. Byler vs. Tome, 39 Md. 463.

It results from the aforegoing, or rather it is only another way of stating the same proposition, that even if the assignment of the mortgage as a conveyance, was as contended, a forgery and an absolute nullity, a good faith-holder of the endorsed note, secured thereby is still just as much entitled to the incidental security of the mortgage itself as if no attempt had been made to execute a formal assignment. 1 Dan. Nego. Inst., Sec. 834; 1 Jones on Mort., Sec. 834; 15 Am. and Eng., Enexeto, 855.

Carpenter vs. Longan, 16 Wall 271, is recognized as the leading case upon this subject. It is followed by Sawyer vs. Prickett, 19 Wall 146, 166, and is cited as an authority upon a point very closely connected in 40 Md. 568.

In the opinion of the Supreme Court, the contrary doctrine to that above stated, prevalent in some States, is held unsound upon a line of reasoning which is in strict consonance with the principles established by Maryland authorities.

There is one circumstance, which at first, caused some hesitation in deciding to apply to this case the doctrine of the Supreme Court. I refer to the obliviousness of Mr. Kirkland in his testimony as to the principal note, and the almost exclusive reliance upon the record title which he appears to exhibit. It is evident, however, from the testimony of his attorney, Mr. Preston, that the production and delivery of the note was insisted upon as an indispensable preliminary to the settlement of the business. Having placed himself in the hands of counsel, Mr. Kirkland appears to have paid little attention to details, although he does say that he knew Batory, the mortgagor, very well and knew him to be "perfectly good outside of the property."

But independently of that, the mere circumstances of an assignee of a mortgage attaching no importance to the mortgage note has been insufficient to make the case an exception to the general rule; Bassett vs. Daniels, 136 Mass. 547.

The rule in terms applicable to the present case may be cited as follows: Where a mortgage to secure a promissory note is made the subject of a fraudulent or forged assignment, but the note with the genuine endorsement of the mortgagee upon it in blank is delivered before its maturity to the assignee, the whole transaction is governed by principles of commercial law applicable to negotiable paper, and the title of a purchaser or value can only be defeated by averment and proof, either direct or circumstantial, of actual knowledge and actual fraud on his part. It is not necessary to constitute a bona fide holding that the full value should have been paid at the time of receiving the security. A past consideration is sufficient; Swift vs. Tyson, 16 Peters 1; Goodman vs. Simonds, 20 Howard 343; Sawyer vs. Prickett, 19 Wall 166; Bank vs. Heald, 25 Md. 563; Busey vs. Reese, 38 Md. 269.

The result is that a decree *in personam* can be passed as against the defendant Busey alone, and as to all his co-defendants, the bill must be dismissed. And, unless an appeal is taken in behalf of Busey, the papers in this case as affecting his standing as a member of the bar will be submitted for the consideration of the Supreme Bench, and as to other aspects of the case, the attention of the State's attorney will be directed to it.