(Decided 19th January, 1882.)

MORTIMER C. TOTTEN *vs.* LEMUEL BUCY.

*Duplicate Contract as Evidence—Defence to an action on a Promissory Note—Fraud, Deception and Failure of Consideration.*

Where a contract is executed by the parties thereto in duplicate or triplicate form, they are all originals, and primary evidence; and it does not require, in order to introduce one of the duplicates as evidence, that notice should be given to produce the other.

In an action by the holder (who claimed to have purchased before maturity,) of a promissory note payable to W. or bearer, against the maker, the proof of fraud or deception in W. in obtaining the note, (the consideration being shown by the defendant to be worthless,) cast upon the holder the burden of proof, that he was a *bona fide* holder for value without notice, or of showing under what circumstances or for what value, he became the holder of the note.

APPEAL from the Circuit Court for Allegany County.

The case is stated in the opinion of the Court.

*Exceptions.*— At the trial, after the testimony summarized in the opinion was in, the plaintiff offered five prayers; the third and fifth are stated in the opinion: the others are as follows :

1. That there is no sufficient evidence in this cause of knowledge on the part of the plaintiff, at the time he purchased the note sued on, of any fraud in the obtention of said note, or of failure of consideration for the same, if they shall find such fraud or want of consideration, and if they find that the said note was signed by the defendant and purchased by the plaintiff *bona fide* for value, before its maturity, then their verdict must be for the plaintiff.

2. That if the jury find from the evidence in the cause, that the defendant signed the note sued on in this case, and shall further find, that the bearer, H. K. White & Co., or their agent, passed it to the plaintiff for a valuable consideration on the 21st October, 1879, and before said note became due and payable, and shall further find that said plaintiff purchased said note without notice of any fraud in the obtention of said note, or any failure of consideration therein, then their verdict must be for the plaintiff.

4. That if the jury find from the evidence in the cause, that the plaintiff purchased the note sued on in this case for value, with no other knowledge than the note and the certificate of property furnished on their face, then they must find that plaintiff was a *bona fide* holder of said note, and no knowledge of fraud or want of consideration in the giving of said note, subsequently acquired by him, can affect his title as a *bona fide* holder for value.

The defendant offered the following prayer :

If the jury find that the plaintiff before, or at the time he received said note, had knowledge of the want of any

consideration for the same, (if they find, there was a total want of consideration therefor,) or that said note was obtained by H. K. White & Co., by fraud practiced upon the defendant in obtaining the same, then the plaintiff is not entitled to recover.

The Court (PEARRE, J.) granted the second and fourth of plaintiff's prayers, and rejected his other prayers, and granted the defendant's prayer. The plaintiff excepted, and the verdict and judgment being for the defendant, he appealed.

The cause was argued before BARTOL, C. J., GRASON, ALVEY and MAGRUDER, J., for the appellee, and submitted for the appellant.

*Wm. M. Price,* and *J. N. Willison,* for the appellant.

*R. T. Semmes,* for the appellee.

ALVEY, J., delivered the opinion of the Court.

This action is brought upon a promissory note for $180, dated October 10, 1879, payable six months after date, to H. K. White & Co., or *bearer.* By the terms of the note, it was made payable at the First National Bank of Cumberland.

The plaintiff claims to have acquired title to the note for valuable consideration, before its maturity; and the defendant pleads and insists that the note was obtained from him by the fraud and deceit of the payees named in the note, through their agent; and that the plaintiff took the note with full knowledge of the facts under which the same was procured from him, the defendant. And, at the trial below, under the instructions of the Court, the jury appear to have so found.

It appears from the record, that the note was given for the deferred payment on a certain number of washing

machines, that were to be furnished to the defendant, at a certain price, to be disposed of by him as agent of the payees of the note. According to the evidence on the part of the defendant, which was not controverted at the trial, only a small portion of the machines were furnished, and they were found to be utterly worthless, and could not be disposed of: That the whole transaction, according to the testimony of the defendant, upon which the note was obtained, was a fraud and a deception, practiced by the agent of the payees of the note upon the defendant; and that similar frauds were practiced upon others, to whom sales of the machines were made, by the same agent. The terms of the arrangement were reduced to writing at the time, and executed in *duplicate* form, each party retaining one of the duplicate originals thus executed. This contract, while it prescribed the number and price of the machines to be furnished, and the terms upon which they were to be supplied to the defendant as agent for sale, contained no stipulation in reference to the making of a negotiable promissory note for the deferred payment on the machines, before they were received by the defendant. It simply stipulated that for the five dozen machines to be furnished at $5 each, the defendant should pay $30 on each dozen ordered, *as they were sold,* and the balance of $180 was to be paid in six months. The defendant, however, in his testimony, states that the party acting for the payees of the note, suggested and urged certain reasons why a note should be given for this $180, and that it would be placed in the bank where payable, "and .that the money realized from the sales of the machines could be applied to the payment; but that he, (the defendant,) had better not move around much for a few days, until he had thoroughly tested the machines." That the agent left one dozen of the machines, and they were thoroughly tested, and found to be entirely worthless, and none of them could be disposed of, though efforts

were made to sell them. It appears that the note in question, instead of being placed at the bank where payable, was, with other notes of a similar character, disposed of to the plaintiff, a broker in Piedmont, West Virginia, on the 21st of October, 1879.

1. The first question raised by exception, is that upon the admissibility in evidence of the contract. This was offered by the defendant for the purpose of showing the nature of the transaction, and it was objected to by the plaintiff, upon the ground, as it would appear, that the duplicate held by the payees of the note was not produced as well as that held by the defendant. But there is nothing in this objection, and the Court was right in overruling it. Where a contract is executed by the parties thereto in duplicate or triplicate form, the parts are denominated *duplicate* or *triplicate originals*, and they are all primary evidence, the one as much so as the other. It does not require, in order to introduce one of the duplicates, that notice should be given to produce the other 1 *Tayl. Ev., p.* 425, *sec.* 396; 1 *Greenl. Ev., sec.* 558.

2. With respect to the prayers offered by the respective parties, we think the Court below was entirely right in its ruling thereon.

The first prayer offered by the plaintiff, and which was rejected by the Court, was clearly erroneous, and the Court was therefore right in rejecting it. It sought to deprive the defendant of all defence to the note, upon the ground of fraud in its inception, and of notice thereof to the plaintiff, by obtaining from the Court an instruction that there was no evidence legally sufficient to charge the plaintiff with notice of the fraudulent character of the note. But there was evidence, and it was properly left to the jury.

In granting the second and fourth prayers offered by the plaintiff, the law was as favorably stated for the plaintiff as he could possibly require to be stated ; and we think those two instructions embraced the whole case,

so far as the plaintiff's claim as a *bona fide* holder for value was concerned. If he could not maintain his right to recover under those instructions, it must have been because the evidence was against him on the question of notice or want of *bona fides* in obtaining title to the note. The instruction given at the instance of the defendant was simply the converse of the propositions contained in the instructions given at the instance of the plaintiff; and upon all the instructions given, the case was fully and fairly placed before the jury, and they found for the defendant.

By the third and fifth prayers of the plaintiff, which were rejected by the Court, different questions were made from those embraced by the instructions actually given.

By the third prayer, the Court was invoked to say, that if the plaintiff obtained the note in good faith and for value, then the verdict of the jury must be for the plaintiff, although it should be found that the note was obtained from the defendant by fraud, and that the plaintiff "had notice of facts which *should* have put him on inquiry." The terms of the prayer, as will be observed, are somewhat inconsistent, and fail perhaps to express with accuracy the legal proposition in the mind of the draftsman. It is true, the transferee of the note was not bound to show that he had acted vigilantly or even cautiously in inquiring into the origin and history of the instrument, in order to sustain his position as *bona fide* holder for value. The question is not what facts the knowledge of which will or will not be sufficient to put the party on inquiry ; but the question is, whether the party had knowledge of the infirmity of the note at the time of the transfer to him ; or, in other words, whether he procured the note in good faith for valuable consideration. *Maitland vs. The Bank,* 40 *Md.,* 568 ; *The Bank vs. Hooper,* 47 *Md.,* 88. If he had such knowledge of the infirmity of the note, whether it was obtained upon inquiry or otherwise

Totten *vs.* Bucy.

was quite immaterial; and with such knowledge the transfer could not have been *bona fide.* To have instructed the jury in the form proposed by the prayer would have been misleading, to say the least of it. But the prayer failed to put to the jury to find that the note was transferred to the plaintiff before its maturity; and this omission was, of course, a fatal defect.

By the fifth prayer, the Court was asked to instruct the jury, that if the note was transferred to the plaintiff before its maturity, then the *onus* was on the defendant to show by evidence that the plaintiff had notice of the want of consideration for the note, and the fraud in its procurement from the defendant, and that, in the absence of such evidence of notice to the plaintiff, he was to be presumed to be holder of the note for value, without notice.

This is clearly not in accordance with the law. It is true that the indorsee or transferee, in an action against the maker of a negotiable note, has nothing to do in the opening of his case but to prove the signatures to the instrument, and introduce it in evidence; for the instrument goes to the jury with the legal presumption that the plaintiff became the holder of the same for value at its date, or before maturity, in the usual course of business, without notice of anything to impeach his title. He is at liberty to rest upon this presumption, and is not bound, in the first instance, to show the circumstances under which he obtained the note, or that he paid value for it. But if the defendant shows by such proof as may be properly left to the jury to consider, that the instrument was procured by fraud, or was fraudulent in its inception, or that the consideration was illegal, or that it had been lost or stolen before it came to the possession of the holder, the burden of proof is changed, and it is then incumbent upon the plaintiff to show that he acquired the note *bona fide* for value, in the usual course of business, before maturity, and under circumstances that create

Totten vs. Bucy.

. no presumption that he knew of the existence of the facts that impeached the validity of the instrument. This is a well established rule as applicable to negotiable instruments; and it is said to be wise and salutary in the protection that it affords. It proceeds upon the presumption that the person who has been guilty of the fraud or illegality in obtaining the instrument would dispose of it, and would place it in the hands of another person to sue upon it; and it is because of such presumption, that the proof of fraud, illegality, or loss, casts upon the holder the burden of showing that he is a *bona fide* holder for value, or under what circumstances, *and for what value, he became the holder of the note.*

The authorities in support of this proposition are numerous, and they will be found collected by *Daniel*, in his valuable work on *Negotiable Instruments*, *Vol.* 1, *p.* 664, sec. 815, *2nd Ed.*; and also in 2 *Greenl. Ev.*, sec. 172, (*10th Ed.*,) and 1 *Taylor Ev.*, *p.* 376, sec. 341, (*6th Ed.*;) *Ellicott vs. Martin*, 6 *Md.*, 509; *Smith vs. Braine*, 14 *Q. B.*, 244; *Bailey vs. Bidwell*, 13 *M. & W.*, 73; *Hall vs. Featherstone*, 3 *H. & N.*, 284; *Commissioners vs. Clark*, 94 *U. S.*, 278, 286; *Collins vs. Gilbert, Ib.*, 753; *Worcester Co. Bank vs. Dorchester & Milton Bank*, 10 *Cush.*, 488.

It is clear, therefore, that the third prayer of the plaintiff was properly rejected, because it sought erroneously to maintain the presumption in favor of the title of the plaintiff to the note, notwithstanding it had been impeached by the evidence on the part of the defence, and after the *onus* of proof had been changed to the plaintiff.

Finding no error in the rulings of the Court we shall affirm the judgment.

*Judgment affirmed.*

(Decided 19th January, 1882.)