REZIN H. GRIFFITH *vs.* GROVE A. SHIPLEY.

*Promissory note— Want of Consideration—Fraud—Evidence.*

Where fraud in the inception of a promissory note is established by incontrovertible evidence, it is incumbent upon the holder, in an action brought by him upon the note, to show that it came to him before maturity, *bona fide*, and for value.

Where there is evidence from which the jury may or may not conclude that the plaintiff who had taken the note before its maturity. at a discount of twenty per cent. had knowledge of its fraudulent character, it is error to withhold this evidence from their consideration.

APPEAL from the Circuit Court for Montgomery County.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., MILLER, IRVING, BRYAN, FOWLER, and McSHERRY, J.

*Wm. Veirs Bouic, Jr.*, and *Thomas Anderson*, for the appellant.

The total failure in the consideration for the note, and its obtention by misrepresentation and fraud, being undisputed facts in this case, it was incumbent on the plaintiff to show by a preponderance of proof that "he was a *bona fide* holder for value, and without notice, in the usual course of business, and under circumstances that create no presumption that he knew of the existence of facts impeaching the validity of the instrument," and "that he did not have notice of facts which *should* have put him on inquiry." *Totten vs. Bucy*, 57 *Md.*, 451 *and* 452; *Goodman vs. Simonds*, 20 *Howard*, 366; *Citizens Natl. Bank of Balto. vs. Hooper, et al.*, 47 *Md.*, 99—101; *Redfield & Bigelow's Leading Cases on Notes*, 251.

This the plaintiff did not do; on the contrary the decided preponderance of proof is, that he had ample notice of the failure of consideration. He was informed by the endorser, who knew at the time he became the owner, of the worthlessness of the consideration, what that consideration was. The prevalent opinion in and around Westminster, where the plaintiff was doing business as a note-shaver, was, that the consideration was worthless. He bought the note at an exorbitant discount, refusing to buy it at fifteen per cent. discount, but insisting on twenty per cent., after he had been told by Classon, the owner, that it was given for hulless oats, and urged the seller and endorser to "keep quiet" about what he, the seller, had told him, the plaintiff, about the consideration for the note being "hulless oats," meaning that Classon should tell no one about his hav-

Griffith *vs.* Shipley.

ing told him before he purchased the note what the consideration was, in order that he might play the role of an innocent purchaser or holder. Besides, he had denounced a sale of "hulless oats" to his son as a "swindle," and lived from that time to the date of his purchase of this note in Westminster. *Clarke vs. Dederick,* 31 *Md.,* 148; *Brander, et al. vs. Ferriday, et al.,* 16 *La. R.,* 296; *Millard vs. Barton,* 13 *Rhode Island,* 601.

Moreover the defendant was an entire stranger to the plaintiff at the time of his purchase of this note, residing a long way off, in another county, which was a fact in itself sufficient to have been submitted to the jury for their determination whether, under all the circumstances, the plaintiff was a *bona fide* purchaser of said note without notice of the consideration for which it was given.

But whilst it required only a preponderance of proof as to absence of notice to entitle the plaintiff to recover, it required more than that to justify the Court in instructing the jury to find for the plaintiff. For in the then state of the case, it not only required that the plaintiff should produce evidence to prove want of notice, but there must have been a *total absence* of competent testimony on the part of the defendant tending to prove notice, that is an absence of all legal and competent testimony from which a rational mind could conclude he had such notice, to justify such action on the part of the Court. *Curtis, et al. vs. Moore, et al.,* 20 *Md.,* 93; *Story on Proms. Notes, p.* 221, *sec.* 197, *and note* 2 *in* 1 *Greenleaf on Evidence, p.* 184.

"The sufficiency of the evidence to satisfy a jury, or the circumstance that it is all on one side, does not authorize the Court to direct the jury that it proves the fact."

They have the power to refuse their credit, and no action of the Court should control the exercise of their admitted right to weigh the credibility of the evidence. *Boyd vs.*

38              v. 74.

Griffith *vs.* Shipley.

*McCann,* 10 *Md.,* 123; *Brown vs. Ellicott,* 2 *Md.,* 82; *Ragan vs. Gaither,* 11 *G. & J.,* 479; *Redfield & Bigelow's Leading Cases on Notes, p.* 216.

*Edward C. Peter,* and *James B. Henderson,* (with whom was *George Peter,* on the brief,) for the appellee.

Whoever purchases a negotiable security from the holder before maturity, gets a good title thereto discharged of any equities which may have existed between the original parties to the instrument, in the absence of *knowledge* on the part of the purchaser of circumstances affecting the title of the holder, provided the purchaser acts in good faith. It is not sufficient to put a prudent man upon inquiry, or that he may have been negligent in failing to avail himself of his means of knowledge. The test of his liability is not negligence or diligence, but it is good faith or bad faith. *Williams vs. Huntington,* 68 *Md.,* 590; *Totten vs. Bucy,* 57 *Md.,* 451; *Citizens' National Bank of Baltimore vs. Hooper,* 47 *Md.,* 88; *Maitland vs. Citizens' National Bank of Baltimore,* 40 *Md.,* 568.

In this case the defendant undertook to prove that the note, which is the basis of this suit, was without consideration, and that it was procured through fraud. It is not contended that the oats sold the appellee were worth $10 per bushel. The appellee himself testified that he did not think so at the time he gave the note. What then induced him to give the note? It was the bond. In his evidence the appellee said I would not have signed the note unless the bond had been given; that he did not sign the note until the bond had been given, and that he relied on the stipulation in the bond.

By this bond the Carroll County Industrial Grain and Seed Company agreed to sell 40 bushels of hulless oats for Mr. R. H. Griffith, at $10 per bushel, less $2.50 per bushel commission, on or before the 1st day of February, 1889. There was no evidence offered to show that Mr.

Griffith *vs.* Shipley.

Griffith requested this corporation to perform the stipulations of its bond, or that it was impossible for it to furnish the hulless oats. The bond does not provide that they should be raised by him, or that said company was not responsible.

"If one will issue his negotiable paper and send it into the world in consideration of an engagement of the party with whom he deals to do some act for him in the future, he declares in effect that he will pay the note or bill according to its terms to any one who shall become the holder for value, in the course of business, and rely for his own indemnity upon the promise he has received as the consideration for issuing it." *Davis vs. McCready,* 17 *N. Y.,* (3 *Smith,*) 230, 232, *referred to in* 1 *Wait's Actions and Defences,* 616.

The evidence of Algire was properly excluded by the Court, because the witness could not say that the seed company, of which Hook, the payee of the note in this case, was president, was handling the same oats sold by the seed company, of which Huddell was president, or that their methods of conducting business were the same. The witness did not testify, nor did the appellant attempt to prove, that the company of which Huddell was the president, issued bonds similar to that issued by Hook's company to the appellant, and which was the only swindle (if there was a swindle) of which the appellant complains. The testimony, therefore, was too remote and inconclusive to sustain the implication of notice to the appellee, and had it been admitted it could not have affected the correctness of the Court's ruling in granting the appellee's prayer.

Cases growing out of similar transactions involving sales of "Bohemian Oats," have been decided by the Superior Court of N. Y., in the case of *Watson vs. Blossom,* 4 *N. Y. Supplement,* 489; and by the Supreme Court of Michigan, in *Sutton vs. Beckwith,* 68 *Mich.,* 303; *Mace vs.*

*Kennedy,* 68 *Mich.,* 389; *McNamara vs. Gargett,* 68 *Mich.,* 454.

In these cases the Court of final resort decided that the questions of failure of consideration, and of notice to the holder of the note, should have been submitted to the determination of the jury. But an examination of the records in the respective cases will show that they abounded in evidence tending to prove the affirmative of those issues.

It will therefore be seen how dissimilar these cases are to the case at bar, in which there is no legally sufficient evidence tending to show either a failure of the real consideration of the note or notice to the appellee of such failure of consideration, should it be determined that it existed.

ALVEY, C. J., delivered the opinion of the Court.

This action was brought by the appellee, as indorsee and holder, to recover the amount of a promissory note made by the appellant on the 20th of February, 1888, payable to F. N. Hook, or bearer, on or before the first of March, 1889, for $160. The note was made payable at the Union National Bank of Westminster, Md., and on failure of payment it was protested. The note itself is in ordinary form, but on the back of it there are certain printed forms of certificates or statements which have not been filled up. The purpose of one of these blank forms, it appears, was to show, when filled up, for what the note was given. The note is also indorsed in blank with the name of Francis J. Classon.

Hook, the payee of the note, was, at the time, president of the Carroll County Industrial Grain and Seed Company, and the agent who obtained the note from the defendant was a person by the name of Forney. It appears that the note was given upon an agreement on the part of the Seed Company to sell to the defendant, to be thereafter delivered, twenty bushels of *hulless oats,* at ten

Griffith *vs.* Shipley.

dollars per bushel, upon the representation made by the agent, Forney, that they were of extraordinary species and productiveness. And at the time of the agreement for sale, the agent produced what he represented as a fair sample of such oats, which indicated an extraordinary species or quality of that cereal, and which he represented would yield at least four times as much as any other oats, and would grow without hulls. He also represented to the defendant that the company would sell for him, forty bushels of hulless oats, according to the terms and prices set forth in a certain bond of the company, (delivered to the defendant at the time of the making of the note,) at least thirty days prior to the maturity of the note, and would, from the proceeds of such sale, pay off the note. That the defendant, acting upon these representations, and upon the faith of the bond, purchased the twenty bushels of "Hulless Oats," for which he paid the agent in cash $40, and gave the note for the balance of the price, $160. That the agent then and there assured the defendant that he would fill up the blank entry or printed indorsement on the back of the note, so as to show that the note had been given for "Hulless Oats." This, however, the agent failed to do, and the note was transferred by Hook to Classon a few days after its date.

The bond referred to in the testimony of the witnesses, and which was given to the defendant at the time he made the note sued on, is set out in the record, and is in this form:

"No. 17.

February 20, 1888.

"The Carroll County Industrial Grain and Seed Company, incorporated under the laws of Maryland, F. W. Hook, Secretary, W. A. Mikesell, Treasurer, doth hereby agree to sell 40 bushels of hulless oats for Mr. R. H. Griffith, of 7 District Montgomery County, State of Mary-

---
Griffith *vs.* Shipley.
---

land, at ten dollars per bushel, in good order, less $2.50 per bushel commission, on or before the 1st day of February, 1889. We make no monetary statements, and the person accepting this bond, acknowledges to have purchased the grain at a speculative value.

(Seal of Company)                    F. N. Hook,
   R. H. Griffith, Buyer.              President."

The defendant then proved that he, shortly after the date of the note and the bond, received twenty bushels of oats from the Seed Company, but that they were in no respect similar to the sample shown at the time of the contract. That he prepared ground and seeded the oats, giving them the most favorable chances for good yield, but that the product was not more than thirty-five bushels, and that of a most inferior quality. That the oats in fact were worthless ; and that instead of being hulless oats, they turned out to be oatless hulls, and of no value whatever. And this being the case, of course, there was no attempt on the part of the company to comply with the terms of its bond.

Frauds and deceptions of the character here complained of had become so frequent in some parts of the State that the Legislature, by the Act of 1888, chapter 415, passed only a little more than a month after the date of the note sued on, has undertaken to put a restraint upon such transactions, by bringing parties perpetrating such frauds within the purview of the penal Code. And while the provisions of that statute cannot apply to this case, they furnish evidence of how such transactions are and have been regarded, and of the necessity of denouncing them as criminal by the law. In deciding this case, as presented on the instruction of the Court below, we must allow to the undisputed facts their full force and effect; and so treating them, no other conclusion can be drawn than that there was gross fraud per-

petrated upon the defendant in óbtaining from him the note sued on; and the material question is, whether there was evidence legally sufficient to be submitted to the jury from which they could find that the plaintiff was not a *bona fide* holder of the nóte for value. The Court below instructed the jury that there was no evidence legally sufficient from which they could find that the plaintiff had any knowledge or notice of fraud or want of consideration in the making of the note, and that therefore their verdict must be for the plaintiff, for the amount of the note. In this we think there was error.

Fraud in the inception of the note being established by incontrovertible evidence, it was incumbent upon the plaintiff to show that the note came to him before maturity, *bona fide* and for value. For even though he may have paid the full face value of the note, still, if he had knowledge at the time of the fraudulent inception of the note, or of the want of consideration for the same, he would not be a *bona fide* holder, and could stand in no better position than the party from whom he obtained the note. This is the settled doctrine in this State, as it is elsewhere. *Totten vs. Bucy*, 57 *Md.*, 446; *Williams vs. Huntington*, 68 *Md.*, 591. In *Stewart vs. Lansing*, 104 *U. S.*, 505, it was held by the Supreme Court, that the indorsee of negotiable paper which has a fraudulent or illegal inception must, in order to entitle him to recover thereon, prove that he is a *bona fide* holder thereof for value. And many other authorities to the same effect might be cited, but it is unnecessary.

Here, there is evidence to show that Classon, who obtained the note from Hook, the payee, indorsed and transferred the note to the plaintiff before its maturity. But Classon swears that he knew, at the time he obtained the note from Hook, "that it was given for hulless oats, and that said oats were worthless, and that this was the prevalent opinion in and around Westminster, where he

and the plaintiff resided.'' There can be no doubt, there-fore, that Classon possessed knowledge of the fraudulent inception and character of the note. It is true, the knowledge possessed by Classon would not affect the validity of the note in the hands of the plaintiff, if the latter acquired title to the note before maturity, *in good faith and for value.* But if the plaintiff had notice, at the time he purchased the note, that it was void, or was sub-ject to impeachment for fraud, or want of consideration, in the hands of Classon, he took it subject to the same equities and defences, that it was subject to in the hands of Classon. Classon not being a *bona fide* holder, neither could the plaintiff be, if he took the note with knowledge of the facts that affected it in the hands of Classon. *Sto. Prom. Notes, secs.* 190, 191. And it is agreed on all sides, says Judge STORY, in his work on *Promissory Notes, sec.* 197, ''that express notice is not indispensa-ble; but it will be sufficient if the circumstances are of such a strong and pointed character, as *necessarily* to cast a shade upon the transaction, and to put the holder upon inquiry.'' Mere negligence or want of caution, such as may exist without the imputation of bad faith, will not do; but a party must not be wilfully blind and inatten-tive to such facts and circumstances as would lead him directly to the knowledge of the infirmities of the paper.

The note, as has been stated, was, by its terms, made payable on or before the 1st of March, 1889; and the bond to the defendant obligated the Seed Company to sell for the defendant the forty bushels of hulless oats, at ten dollars per bushel, on or before the 1st of February, 1889. And, according to the proof, the proceeds of this sale of oats were, in part, to be applied in taking up the note. As between the original parties to the note, and as against all who subsequently took it after ma-turity, or who took it by transfer before maturity with notice or knowledge of the facts of the transaction out of

Griffith *vs.* Shipley.

which the note had its origin, the bond and note must be taken together as forming parts of one and the same contract, and must be construed together as constituting the entire contract between the parties. It is very apparent that the note would not have been given without the bond, and that the bond formed the principal, if not the entire inducement to the making of the note. The stipulations of the bond have not been performed, and, with the knowledge of the deception in regard to the oats, it is most improbable that the party giving it ever supposed that the bond could be performed. The consideration for the note, therefore, has utterly failed, or rather no valid or substantial consideration for it ever existed; and therefore no holder of the note is entitled to recover thereon, except a party who may have in good faith acquired title to the note before maturity and for value. See *Sutton vs. Beckwith,* 68 *Mich.,* 303; *McNamara vs. Gargett,* 68 *Mich.,* 454.

Was there evidence, then, legally sufficient, that ought to have been submitted to the jury, from which they could have found that there was notice on the part of the plaintiff, at the time of obtaining the note, of the want of consideration, or of fraud in its inception? We think there was such evidence, and that there was error in not submitting it to the jury.

The plaintiff admits that he knew of the Seed Company, and of its dealing in hulless oats; though he swears that he obtained the note innocently, and without any knowledge of the want of consideration or of fraud. He was a note shaver; and Classon, from whom he obtained the note, swears that at the time he transferred the note to the plaintiff he told him that the note was given for "hulless oats." This witness, Classon, also swears that he offered the note to the plaintiff at a discount of 15 per cent., but that the plaintiff would not take it at that rate, but offered to and did take it at a discount of 20

per cent., though the note bore interest from its date. He also swears that, at the time of selling the note to the plaintiff, the latter requested him to keep quiet about it. The witness himself knew that the note had been given for "hulless oats," and that the oats were worthless, though, he says, he did not tell the plaintiff that he knew the oats were worthless. This was evidence, certainly, from which the jury might, or might not, have concluded that the plaintiff had knowledge of the fraudulent character of the note, at the time he discounted it at the rather heavy shave of 20 per cent.; and it was evidence we think that the jury should have been allowed to consider. And we are of opinion, moreover, that there was error in striking out the testimony set forth in the first exception. That testimony furnished evidence that the plaintiff, as far back as January, 1886, knew of the dealing in hulless oats in his neighborhood, and that they were things about which people were liable to be swindled, as he alleged his son to have been. This proof was of a circumstance that should have been permitted to go to the jury, in connection with the proof of the other facts of the case. The judgment must therefore be reversed, and a new trial awarded.

*Judgment reversed, and*
*new trial awarded.*

(Decided 12th November, 1891.)