## HUTCHINS *v*. LANGLEY.[*]

PROMISSORY NOTES; BONA FIDE HOLDER FOR VALUE; PAROL EVIDENCE; PRACTICE.

1. Defenses available against the holder of a note are available against a receiver appointed under a decree of court to collect the note.

2. The position of the holder of negotiable paper for value is a strong one, and he cannot be displaced by mere circumstances of suspicion, grow-

---

[*]*Bills and Notes—Fraud—Bona Fide Purchaser.*—As to fraud in obtaining the execution of a note as a defense against a bona fide holder, see the presentation of the authorities in editorial note to *Green* v. *Wilkie,* 36 L. R. A. 434.

ing out of the unpopular business, or even the ill reputation, of his assignor. (Following *Brewer* v. *Slater*, 18 App. D. C. 56.)

3. A party who takes negotiable paper before maturity for a valuable consideration, without knowledge of any defect of title, in good faith, can hold it against all the world. A suspicion that there is a defect of title in the holder, or a knowledge of circumstances that might excite such suspicion in the mind of a cautious person, or even gross negligence at the time, will not defeat the title of the purchaser. This result can be produced only by bad faith, which implies guilty knowledge or wilful ignorance, and the burden of proof lies on the assailant of the title.

4. In the absence of fraud, accident, or mistake, the rule is the same in equity as at law, that parol evidence of an oral agreement alleged to have been made at the time of drawing, making, or indorsing a bill or note, cannot be permitted to vary, qualify, or contradict, or to add to or substract from, the absolute terms of the written contract.

5. Fraud in obtaining a note given in payment for stock is not sufficiently proved where it appears that the payee promised to return the note under certain conditions, and never to use it as collateral security, except in a certain locality; both of which promises he failed to keep. In such a case a bona fide holder for value may recover on the note against the maker. (Citing *Green* v. *Stewart*, 23 App. D. C. 570; *Brown* v. *Petersen*, 25 App. D. C. 359.)

6. The grounds of exceptions taken to rulings of the trial court should be stated by counsel.

No. 1611. Submitted February 15, 1906. Decided April 3, 1906.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia in an action on a promissory note.                    *Affirmed.*

The COURT in the opinion stated the facts as follows:

John W. Langley, receiver, the appellee, brought suit in the court below against Stilson Hutchins, the appellant, for the sum of $3,800 with interest, the amount of a promissory note executed by said Hutchins, dated March 3, 1902, payable to the order of Anderson T. Herd, ninety days after date, and by said Herd indorsed before maturity.

Upon the trial, the court instructed the jury to return a ver-

dict for the appellee, and from the judgment thereon this appeal was taken. At the trial it appeared that William R. Merriam, in behalf of his wife, in March, 1902, purchased of Anderson T. Herd, through John W. Langley, 1,000 shares of stock of the Consolidated Quicksilver Mining Company of the par value of $10, for $9,000, which Merriam paid in cash. At the time Herd agreed to repurchase the stock within ninety days for the purchase price, from Merriam, if he desired to return the stock. About one month later Merriam decided to return the stock, and for this purpose sent John W. Langley, the appellee, to New York. Herd accepted the stock returned, but, instead of money, gave Langley his own promissory note for $9,000, dated April 7th, 1902, indorsed by Dowe and Beekman, payable ten days after date, and, as collateral security for the payment thereof, also the 1,000 shares of stock returned by Merriam, two notes of $2,500 each, made by M. C. Butler, with 500 shares of the same stock attached, and also the promissory note of Stilson Hutchins for $3,800 sued for in this action, indorsed in blank by said Herd and by Dowe and Beekman.

At the time W. R. Merriam purchased said shares of stock, Herd sold some shares to Langley, to William H. Merriam, and David J. Peffers upon the same conditions as in the sale to William R. Merriam for his wife. After Langley delivered to William R. Merriam Herd's note for $9,000 and the collateral including the note in suit, William H. Merriam, Peffers, and Langley, severally, sued Herd to recover the value of the stock each had purchased from Herd. Writs of attachment were issued against William R. Merriam, to which he made answer that he held the Herd note mentioned and the securities named as collateral. Mrs. Laura E. Merriam, the wife of William R. Merriam, filed a bill in equity against Herd, Langley, William R. Merriam, William H. Merriam, and David J. Peffers, the attaching creditors. In that suit Langley was appointed receiver of the notes and securities held by William R. Merriam for his wife, and was authorized to bring suit to recover thereon.

As receiver, Langley, as stated, brought suit against Hutchins to recover the amount of this $3,800 note. This note had been

obtained by Langley for Merriam or his wife before its maturity in the manner and for the consideration before stated.

The appellant testified that he gave the note sued on for 400 shares of the same mining stock purchased upon Herd's representation that the stock had never sold below par, and that, should appellant's note be used as collateral, it would be so used in a New York bank, and would not be negotiated in Washington, and that, should the stock sell below $9 per share, Herd would return to Hutchins his note upon his demand for it; that within a month after the date of the note the price of the stock greatly declined, and Hutchins demanded the return of said note, but Herd made excuse that the note had been tied up in some proceedings against the company; that it was about the time of Hutchins's demand for the return of the note that Herd turned it over to Langley for Merriam. It is true that Herd used the note as collateral security, but in such fashion that it was negotiated, not in New York, but in Washington.

The appellant claimed that Herd's statement concerning the value of the stock was false and fraudulent, and that, when Herd gave his (Hutchins's) note to Langley for Merriam, Herd violated his promise to Hutchins that the note would not be returned to Washington, and therefore that the note was fraudulently obtained and negotiated.

The appellant called William R. Merriam, who testified that he had no notice of any infirmities in the making or the negotiating of the note, nor of any defect in the title of Herd; that Herd had informed Merriam that he (Herd) had sold stock to the appellant and had received his note therefor, but that he (Merriam) had no information respecting any agreement between Herd and Hutchins relating to the giving of the note, or to the conditions upon which Herd purchased the stock, except that Herd told him he had such note; "but Herd did not particularly say anything to him about the circumstances of the sale of the stock to appellant." The evidence fails to show that the indorsement of the note by Herd as collateral security for his own note to William R. Merriam was collusive or fraudulent, and fails to bring home to Merriam any knowledge that

would vitiate in his hands this promissory note indorsed to him as a bona fide holder before maturity.

*Mr. Edwin C. Brandenburg, Mr. Clarence A. Brandenburg,* and *Mr. F. Walter Brandenburg* for the appellant.

*Mr. D. W. Baker, Mr. W. J. Lambert,* and *Mr. Frank J. Hogan* for the appellee.

Mr. Justice McComas delivered the opinion of the Court:

Defenses available against the holder of a note are available against a receiver such as the appellee here to whom the note is transferred under a decree of the court. Dan. Neg. Inst. 5th ed. § 781.

In this transaction Langley was the agent of Merriam. For this reason, and for the sake of clearness, hereafter we speak, not of Langley, the receiver, but of William R. Merriam, the holder of the note.

The note is complete and regular upon its face. It is undisputed that Merriam became a holder, in due course, of the appellant's note, and became the holder of it before it was overdue; that he took it in good faith and for value is the fair conclusion from all the testimony. Herd indorsed the note in blank, and delivered it to Langley as collateral security for Herd's note for $9,000, given to Merriam at the same time.

It is urged that Merriam had such knowledge of Herd's sale of mining stock as to put him upon inquiry before taking this note. This court has said: "The position of the holder of negotiable paper for value is a strong one, and he cannot be displaced by mere circumstances of suspicion growing out of the unpopular business, or even the ill reputation, of his assignor." *Brewer* v. *Slater,* 18 App. D. C. 56.

Suspicious circumstances alone do not impute notice to such a holder before maturity. "One who purchases such paper from another who is apparently the owner, giving a consideration for it, obtains a good title, though he may know facts and cir-

cumstances that may cause him to suspect, or would cause one of ordinary prudence to suspect, that the person from whom he obtained it had no interest in it, or authority to use it for his own benefit, and though, by ordinary diligence, he could have ascertained these facts. *Goodman* v. *Simonds,* 20 How. 343, 15 L. ed. 934. He can lose his right only by actual notice or bad faith." *Swift* v. *Smith,* 102 U. S. 442, 444, 26 L. ed. 193, 194.

It was attempted to show that the appellee was a holder in bad faith by the alleged suspicious circumstances which we have stated. As this court has said, suspicion is not proof. The note is complete and regular · upon its face. All of the circumstances thought to be suspicious are outside of the instrument itself, and the Supreme Court says: "But it is a very different thing when it is proposed to impeach the title of a holder for value by proof of any facts and circumstances outside of the instrument itself. He is then to be affected, if at all, by what has occurred between other parties; and he may well claim an exemption from any consequences flowing from their acts, unless it be first shown that he had knowledge of such facts and circumstances at the time the transfer was made." *Brown* v. *Spofford,* 95 U. S. 474, 483, 24 L. ed. 508, 510.

Neither suspicion nor gross negligence can defeat the title of the appellee to this note, nor is the burden of proof upon him. "The law is well settled that the party who takes negotiable paper before due for a valuable consideration, without knowledge of any defect of title, in good faith, can hold it against all the world. A suspicion that there is a defect of title in the holder, or a knowledge of circumstances that might excite such suspicion in the mind of a cautious person, or even gross negligence at the time, will not defeat the title of the purchaser. That result can be produced only by bad faith, which implies guilty knowledge or wilful ignorance; and the burden of proof lies on the assailant of the title." *Hotchkiss* v. *National Shoe & Leather Bank,* 21·Wall. 354, 359, 22 L. ed. 645, 649.

The appellant relies upon the oral agreement of Herd to return the note and to use it as collateral elsewhere than in Washington. We have said that the evidence falls short of showing

that the note was obtained by fraud, or that it was negotiated fraudulently.

"In the absence of fraud, accident, or mistake, the rule is the same in equity as at law,—that parol evidence of an oral agreement alleged to have been made at the time of drawing, making, or indorsing a bill or note cannot be permitted to vary, qualify, or contradict, or to add to or subtract from, the absolute terms of the written contract. *Forsythe* v. *Kimball,* 91 U. S. 291, 23 L. ed. 352." *Brown* v. *Spofford,* 95 U. S. 474, 481, 24 L. ed. 508, 509.

This case differs from the class of cases to which *Griffith* v. *Shipley,* 74 Md. 602, 14 L. R. A. 405, 22 Atl. 1107, and *Totten* v. *Bucy,* 57 Md. 448, belong. In the one case the fraudulent sale of "hulless oats," and in the other of worthless washing machines, for which a note was given, were accompanied by circumstances which shifted the burden of proof to the holder of the note.

We have said that, while there are suspicious circumstances in this case, the evidence is not legally sufficient to establish the charge that this note was obtained by fraud. It appears that Herd represented to Hutchins that the quicksilver mining stock had never sold below par. We find nothing in the record proving this statement untrue. It is true that, immediately after the note was given, the stock fell rapidly. Herd promised Hutchins that a dividend would soon be declared and others would follow, and shortly thereafter a dividend was declared. Herd promised, under certain condition, to return Hutchins's note, and thereafter Herd failed to keep his promise. This is not legally sufficient to prove that the note was fraudulently obtained. When the appellant gave the note, Herd promised that it should be used only as collateral security in a New York bank. This promise may or may not have been made in good faith. The note was used as collateral for Herd's note given to Merriam, who brought it back to Washington and negotiated it here. There is not enough in this transaction to support the charge that this note was fraudulently negotiated. Herd failed to deliver the stock to the appellant, and it appears the stock

has not been delivered; and it also appears that, when the stock began to fall so rapidly, the appellant naturally sought more eagerly for the return of his note than for the delivery of the stock. In each of the other instances Herd appears to have delivered the stock he sold with celerity, while he was slow to return the cash or notes given therefor.

In cases similar to the case before us, this court affirmed the action of the trial court in directing a verdict for the plaintiffs. See *Green* v. *Stewart,* 23 App. D. C. 570, and also *Brown* v. *Petersen,* 25 App. D. C. 359.

The learned court below did not err in directing the jury to return a verdict for the plaintiff.

2d. Since we decide that the court properly directed a verdict for the plaintiff, the minor exceptions to the refusal of the court to admit certain testimony become unimportant. The reasons which induced Merriam to demand from Herd a return of the note the former had given the latter for stock, or the reason why Merriam had not turned over the note in suit to his wife, do not appear to affect the issue here. We fail to see how testimony upon these points was relevant, and it appears that at the trial below appellant's counsel omitted to state the grounds of exception to the court's rulings. This, of course, counsel ought to do. The other exceptions to the testimony offered and refused by the learned court below are so unimportant that we need not discuss them.

The judgment of the court below must be affirmed with costs, and it is so ordered.                          *Affirmed.*