JOSEPH C. STOUFFER *vs.* ALBERT G. ALFORD.

*Bills and Notes—Pleading—Acceptance of Bill Procured by Fraud—Burden of Proof on Holder to Show Good Faith—Sufficiency of Evidence of Fraud—Instructions to the Jury.*

In an action against the acceptor of a bill of exchange, a special plea on equitable grounds, alleging that the defendant's acceptance had been obtained by fraudulent representations, is defective in that it fails to charge that the plaintiff had notice of the alleged fraud, and also because the defense of fraud in such case is admissible under the general issue plea.

When the maker or acceptor of a negotiable instrument in an action against him by the holder produces evidence to show that his signature was obtained by fraud, the burden of proof is then cast upon the plaintiff to show that he acquired the instrument before maturity, for value, and without notice of any defect or fraud.

Defendant was induced to agree to give a trial order for certain jewelry and to accept drafts for the price, upon the faith of representations made to him that articles of that kind were to be furnished to only one other dealer in the city; that they were of first-class quality and would last for twenty years; that the seller guaranteed the sale of enough of the jewelry during the coming season to pay for all of it, and that the seller would buy back at cost price, at the end of the year, any goods left on defendant's hands. *Held,* that evidence

that these representations were made and that they were false, is admissible in an action upon the acceptances, to show that they were obtained by fraud, and such evidence, if found to be true by the jury, is sufficient to justify a verdict for the defendant.

In an action against the acceptor of a bill of exchange, the jury was properly instructed at the instance of the defendant, that in determining whether or not his signature was procured by fraud, the jury were to consider all of the circumstances concerning the transaction given in evidence, and if the jury found that the agent of the drawer of the bill represented to the defendant at the time of the sale of the goods for which the bill was drawn and accepted that the drawer was the manufacturer of the goods; that they were of fine quality and guaranteed to wear for twenty years; that goods of that kind would be sold to only one other dealer in the city, and that if the jury found that similar goods were sold to other merchants, and that they were practically worthless, the jury may infer that defendant's signature was obtained by fraud, and if they so find their verdict should be for the defendant.

*Held,* further, that a prayer offered by the plaintiff was properly rejected which instructed the jury that a failure by the seller to fulfil his promises would not constitute fraud in procuring the acceptance of the draft. This prayer segregates a single circumstance from others closely related.

*Held,* further, that the plaintiff in this case did not ratify the contract of sale and waive his right to claim that his acceptance of the draft had been procured by fraud by keeping the goods and offering them for sale.

*Decided November 16th, 1910.*

Appeal from the Superior Court of Baltimore City (STOCKBRIDGE, J.).

*Plaintiff's 4th Prayer.*—If the jury shall find from the evidence that the defendant is a business man and was able to read and write and that he signed the contract with the Lyon-Taylor Company testified to in this case, and that he

subsequently, a week or more later, accepted or signed the drafts in accordance with the said contract then the said defendant is thereby presumed to have known and agreed to the terms of the said contract, and that he cannot now claim that he was induced to sign or accept the drafts because of any false representations as to its terms and conditions, if the jury shall find that such false representations were made. (*Refused.*)

*Plaintiff's 5th Prayer.*—That if the jury shall find that, by the defendant's own evidence he was able to read and write and signed the contract or order for the goods, and a week or more later, about October 26th, 1904, he received the goods, put them on sale, and actually sold some of them, and kept the said goods on sale until after Christmas, during all of which time he had a copy of the contract in his possession, then the said defendant cannot evade liability on the said drafts accepted by him in accordance with the contract, because of any fraudulent representations as to the terms of the said contract, even though the jury shall find that such representations have been made, and the jury is instructed that the said defendant by his said course of conduct has waived any rights he might have to make that contention and that he has ratified his action in accepting the said drafts and is bound thereby. (*Refused.*)

*Plaintiff's 6th Prayer.*—That the defendant (even if he was induced to enter into the contract with the Lyon-Taylor Company and to accept the drafts offered in evidence, by reason of false statements and representations made by the salesman of that company),—was bound upon discovering the said statements and representations to be false to promptly rescind his contract, and that the testimony in this case does not show that he did act promptly in rescinding the same, and therefore the verdict of the jury must be for the plaintiff. (*Refused.*)

*Plaintiff's 7th Prayer.*—That even if the jury shall find that the Lyon-Taylor Company failed to fulfill any of its

promises or agreements contained in the contract or any of the promises made by its salesman, that these facts would not constitute fraud in the procuring of the drafts offered in evidence. (*Refused.*)

*Plaintiff's 8th Prayer.*—That in order to entitle the defendant to claim that his signature and acceptance of the drafts offered in evidence were obtained by fraudulent representation that similar goods had not been sold to other people, he must show (1) that that statement was false in fact, (2) that it was a material consideration inducing said defendant to enter into said contract and to accept said drafts, and (3) that he relied on that representation and would not have accepted the drafts except for said representaiton. (*Granted.*)

*Defendant's 2nd Prayer.*—The jury are instructed that in determining whether or not the defendant's signature to the instruments sued on was procured by fraud, they are to consider all the circumstances surrounding the signing of same by defendant as detailed in evidence, and all the other evidence in the case; and if the jury find that the agent of the Lyon-Taylor Company represented to defendant at the time of the sale of the goods to defendant that the Lyon-Taylor Company was the manufacturer of said goods, that the goods are of fine quality and guaranteed to wear from five to twenty years; that no goods would be sold in West Baltimore and only to one dealer in East Baltimore; and if the jury further find that the goods were of inferior quality and practically worthless, that other goods were sold by the Lyon-Taylor Company to other merchants in West Baltimore; then the jury must infer from these facts and the other evidence in the case that defendant's signature to the bills of exchange sued on was procured by fraud, and if they so find their verdict should be for the defendant. (*Granted as modified.*)

*Defendant's 5th Prayer.*—If the jury believe that certain merchandise was sold to the defendant by the Lyon-

Taylor Company upon the representation made by its agent among others that no other merchandise would be sold by it within certain bounds of defendant's business; that the defendant was induced by said representations to sign the said bills of exchange sued on; that but for said representations he would have not signed them, and that merchandise was sold by the company to others within said bounds, then the jury may infer that the signature of the defendant were procured by fraud, and if the jury so find the signatures were procured by fraud their verdictt should be for the defendant. (*Granted as modified.*)

*Defendant's 7th Prayer.*—If the jury · believe from the evidence that the defendant was induced to sign the bills of exchange sued on by a misrepresentation among others of the agent of the Lyon-Taylor Company as to the kind of quality of the merchandise sold by said company to defendant, then the jury may infer that the signatures of the defendant were procured by fraud, and if the jury so find that the signatures of the defendant were procured by fraud their verdict should be for the defendant. (*Granted as modified.*)

*Defendant's 9th Prayer.*—The jury are instructed that gross inadequacy of consideration is one of the badges of fraud, and they may consider the evidence of the value of the jewelry, and the price at which it was sold to defendant in connection with other representations, if any, of the agent of the Lyon-Taylor Company to defendant in arriving at a conclusion as to whether or not the defendant's signature to the bills of exchange sued on was secured under such circumstances as to amount to fraud. (*Granted.*)

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS, PATTISON and URNER, JJ.

*John G. Schilpp* and *Clifton Maloney* (with whom was *Tracy L. Jeffords* on the brief), for the appellant.

*O*

*Wm. Henry White* and *Frederick J. Singley,* for the appellee.

SCHMUCKER, J., delivered the opinion of the Court.

The appellant, claiming to be the lawful holder of four overdue negotiable drafts which had been accepted by the appellee, sued him thereon in the Superior Court of Baltimore City.

The declaration alleged that the drafts had been drawn upon the appellee by Milbert T. Price and Louis ʾE. Lyon, trading as Lyon-Taylor Company, and, after their acceptance by him, had been endorsed by Lyon-Taylor Company to the appellant for value, before maturity and without notice of any defect therein. The appellee, as defendant, pleaded the general issue pleas and a special plea as an equitable defense averring that his acceptance of the drafts had been procured without consideration and by fraud, misrepresentation and deceit. The plaintiff demurred to the special plea, but his demurrer was overruled by the Court whereupon he joined issue on all of the pleas.

At the trial of the case the plaintiff offered the drafts in evidence and then, upon the admission by the defendant of his signature to the acceptances, rested his case. The defendant offered evidence tending to prove that his acceptance had been fraudulently procured. This evidence was admitted, over the plaintiff's objection, subject to exception and at the close of the defendant's case the plaintiff moved to strike it out but the Court overruled the motion. The plaintiff then, without any proof of the circumstances under which he obtained the acceptances or of his *bona fides* in that connection or his want of notice of any facts or circumstances impeaching their validity, contented himself with offering evidence tending to contradict the testimony of the plaintiff's witnesses, that much of the jewelry for which the drafts had been drawn had been charged to the defendant at grossly excessive prices.

The verdict and judgment below having been for the defendant the plaintiff took the present appeal.

We will dispose first of the issue raised by the demurrer to the special plea setting up fraud in procuring the defendant's acceptance of the draft. That plea was defective in failing to charge the plaintiff with knowledge or notice of the alleged fraud. *Banks* v. *McCosker,* 82 Md. 521; *Black* v. *Bank of Westminster,* 96 Md. 415-416. It was bad for the further reason that the alleged fraud in procuring the acceptances could have been set up by a plea at law and was therefore not available as an equitable defense. *Robey* v. *State,* 94 Md. 71. The fact that this plea was defective was not vital to the defense relied on in the case, for the defendant was entitled under the general issue plea to introduce evidence of the fraud practiced in procuring his acceptance of the drafts constituting the cause of action in the suit. *Banks* v. *McCosker,* 82 Md. 521; *Groff* v. *Hansel,* 33 Md. 164; *Griffith* v. *Shipley,* 74 Md. 601.

The important inquiry in the case is whether the evidence that was offered in behalf of the defendant upon the question of fraud in the inception of the acceptances was legally sufficient to go to the jury. If it was properly submitted to them, not only were they the exclusive judges of its weight, but its introduction cast upon the plaintiff the burden of proving that he had acquired the acceptances *bona fide,* for value, before maturity, and without notice of any facts impeaching their validity—a burden which he did not attempt to discharge. That proposition, as to the shifting of the burden of proof under such circumstances, after having been repeatedly asserted in the opinions of the Court, has recently incorporated into the Statute Law of the State. *Totten* v. *Bucy,* 57 Md. 446; *Williams* v. *Huntington,* 68 Md. 591; *Griffith* v. *Shipley,* 74 Md. 599; *Cover* v. *Myers,* 75 Md. 406; *Arnd* v. *Heckert,* 108 Md. 300; *Banks* v. *McCosker,* 84 Md. 297; *Code Public General Laws,* Art. 13, secs. 74, 78.

Turning now to an examination of the evidence on behalf
of the defendant Alford we find his own uncontradicted testi-
mony to be substantially as follows: In September. 1904, a
young man come to Alford's store in Baltimore professing
to be a salesman of the Lyon-Taylor Company, which he de-
scribed as the largest or one of the largest jewelry manu-
facturing concerns in the world, and tried to interest him in
a line of jewelry. On being told by Alford that he was not
a jeweller, but a dealer in sporting goods and knew nothing
about jewelry or its prices and did not wish to handle it, the
salesman urgently pressed him to take a line of jewelry say-
ing that the company desired to have him for its distribut-
ing agent in West Baltimore—that it already had a Mr.
Thompson as its agent for East Baltimore and that none of
its goods would be supplied to any other merchants in Bal-
timore,—that the jewelry was first class and would last for
twenty years,—that there was a large profit in it and that
he would guarantee that Alford would sell enough of it dur-
ing the holidays to pay for the whole lot,—that the company
would buy back from him at cost price any goods that he
had on hand at the end of a year, and making other state-
ments of a similarly seductive character.

Alford, being then in feeble health as the result of a recent
surgical operation, yielded to the persuasion of the salesman
and consented to have a "trial order" of the goods sent to
him for sale, and signed a printed order therefor tendered
him by the salesman, who then promptly departed. The
"trial order" according to the provisions of the paper signed
by Alford was to be composed of articles made of sterling
silver, rolled gold plate, etc., to the value of $380, to be
selected by the vendor company, at prices ranging from the
lowest to the highest of a stated list.

On the following day Alford, believing that he had been
induced to do what he ought not to have done, wrote a letter
appearing in the record to the Lyon-Taylor Company tell-
ing them so and requesting them not to send him the jewelry.

No reply was received to this letter, but a week or two afterwards a different young man came to Alford's store with the jewelry. When told of the letter of countermand written by Alford he said the company had not received it and that the company would not allow the cancellation of orders. Alford, being still ill, was prevailed upon by the young man to receive the goods and sign the acceptances, for their price, forming the cause of action.

Alford put the jewelry in his store window but was unable to sell more than two small pieces of it up to November 30th when he wrote to the company informing them of the situation and advising them to put it elsewhere, but offering to continue his efforts to sell it in their interest through the holidays if they desired. He received no reply to the letter.

The defendant also proved by four witnesses doing business in West Baltimore that, shortly after the time of the transaction testified to by him, each one of them had been visited by a salesman from the Lyon-Taylor Company or the Puritan Manufacturing Company which was admitted to be the same enterprise under another name, and induced to buy a "trial order" of jewelry by representations similar to those made to the defendant. By two other witnesses doing business in Baltimore he proved that attempts had been made by the agent of the same company to sell "Trial orders" of the jewelry to them by like representations.

The defendant further proved by William J. Miller, a jeweller of fifteen years' standing, that many of the articles of jewelry included in the "Trial order" sent to the defendant were of an inferior order and would last but a few months and were not worth more in some cases than one-fourth of the prices at which they were charged to the defendant.

The plaintiff put on the stand Charles Becker, also a jeweller of long standing, who gave evidence of a contrary tenor as to the value of the jewelry in question.

We think the evidence offered on behalf of the defendant was admissible. Having signed a written order to ship the goods to him upon the terms and conditions of the so-called printed contract on which the order was endorsed, he was not at liberty to introduce parol evidence to vary the terms of his order but he could show by such evidence that he was induced to sign it by fraud. *Hurn* v. *Soper*, 6 H. & J. 276; *David* v. *Hamblin*, 51 Md. 540; *Wilson* v. *Pritchett*, 99 Md. 583. And he could introduce such evidence for that purpose even though it tended to contradict some of the declarations embodied in the written contract. *Southern Advertising Co.* v. *Metrople Co.*, 91 Md. 61; *Wilson* v. *Pritchett*, *supra*; *Bierly* v. *Dodson*, 107 Md. 233; *Willis* v. *Kern*, 21 La. Ann. 749.

We think the evidence to which we have adverted was proper to be considered by the jury in determining whether the defendant's acceptance of the drafts had been fraudulently procured by the agent of the drawer. Fraud need not be established by direct evidence but may be, and generally must be, detected by a consideration of the acts, declarations and condition of the parties at or about the time of the transaction and all of the circumstances surrounding it. Even the acts of the parties toward third persons have been held to be admissible in evidence to show the *quo animo* of the particular transaction, and such acts may be proven by the third parties. *McAleer* v. *Horsey*, 35 Md. 461; *Cooke* v. *Cooke*, 43 Md. 522; *Mutual Life Ins. Co.* v. *Armstrong*, 117 U. S. 491; *Lincoln* v. *Clafflin*, 74 U. S. 132; *Butler* v. *Watkins*, 80 U. S. 456-464.

Having determined the controlling legal principles involved in the controversy before us we can dispose without difficulty of the specific rulings of the Court below to which exceptions were taken in the course of the trial.

The first four exceptions were taken to the admission of portions of the evidence to which we have already adverted

and the fifth exception was to the refusal of the Court to strike it out. What we have already said sufficiently disposes of those exceptions.

The remaining exceptions were to the rulings made below in connection with the prayers. The plaintiff offered twelve prayers of which the Court granted the first, eighth and tenth and rejected the others. The defendant offered nine prayers of which the Court granted the second, fifth and seventh after modifying them in certain respects and granted the ninth in the form in which it was offered and rejected the others. Those of the prayers to which we shall refer will be set out by the reporter.

The granted prayers of the defendant, in the modified form in which they were granted, asserted in effect two propositions. The first was that the jury, in determining whether the defendant's signature to the acceptances sued on has been procured by fraud, should consider the evidence as to all of the circumstances surrounding the act of his signing them including the acts and representations of the agent of the Lyon-Taylor Company and the evidence touching the sales made by the same parties of similar goods to other merchants in West Baltimore. The second was that if the jury found that the defendant's signature to the acceptances had been procured by fraud their verdict should be in his favor.

There was no error in granting those prayers. We have sufficiently stated in the earlier portion of our opinion the law controlling their first proposition. In reference to their second proposition it is only necessary to say that the proof of fraud in the procuring of the acceptances threw upon the plaintiff the burden of showing himself to have been a holder of them in due course, and as he made no attempt whatever to do that there was nothing left for the jury to do but find a verdict for the defendant.

The plaintiff's second, third and ninth prayers were properly refused because they required the jury to find for the plaintiff for want of legally sufficient evidence to sustain in

whole or in part the defense relied on by the defendant. We think, for the reasons already stated, that there was enough evidence, in the case, if the jury believed it, to justify their verdict. His seventh prayer was bad in segregating the single circumstance of a failure of the sellers to fulfill the agreement of sale from the other facts in the case to which it bore a close relation and asking an instruction upon the effect of that circumstance alone. His fourth, fifth and sixth prayers assert that the defendant was estopped by certain particular acts of his own from relying upon the defense of fraud in the procuring of the acceptances. We cannot assent to the proposition of those prayers as applied to the present case. The defendant's conduct, in considering the method of obtaining his signatures to the acceptances, must be considered as an entirety. Furthermore the fact of proving the fraud did not of itself constitute a complete defense to the suit of the plaintiff as a holder of the acceptances. It simply put upon him the burden of proving that he was, what he pretended to be, a *bona fide* holder of them for value and without notice. He lost his case by making no attempt at all to verify by proof that essential fact of his own title.

The case is one of a now familiar class to which belong those of *Totten* v. *Bucy,* 57 Md. 446; *Griffith* v. *Shipley,* 74 Md. 591; *Cover* v. *Myers,* 75 Md. 406; *Wilson* v. *Pritchett,* 99 Md. 583; *Arnd* v. *Heckert,* 108 Md. 300.

The judgment appealed from will be affirmed.

*Judgment affirmed, with costs.*